Robert **TADDONIO**

v.

Margaret M. **HECKLER,** Secretary of Health and Human Services.

**Civ. A. No. 83–5600.**

United States District Court, E.D. Pennsylvania.

May 16, 1985.

Mark Kaufman, Delaware County Legal Assistance, Chester, Pa., for plaintiff.

Edward S.G. Dennis, Jr., U.S. Atty., Joan Garner, Edith Ho, Asst. U.S. Attys., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are the parties' cross-motions for summary judgment. Briefly stated, plaintiff argues that the termination of his Supplemental Security Income benefits ("SSI") for non-medical reasons prior to a hearing before an Administrative Law Judge ("ALJ") violates his Fifth Amendment right of due process. Taking a position contrary to that of plaintiff, the Secretary of Health and Human Services ("Secretary") contends that the pretermination process afforded plaintiff is sufficient. For the reasons stated below, plaintiff's motion for summary judgment will be denied and the Secretary's motion will be granted.

The parties have stipulated to the facts in this case, and the court recited those facts in its Opinion of February 28, 1985, 603 F.Supp. 1008. The court adopts that recitation of facts to the extent that those facts are relevant here.

## DISCUSSION

By way of background, in order to reach plaintiff's principal challenge, the court has disposed of numerous preliminary issues in its prior rulings on the parties' other motions. Relevant to this decision are the following two holdings: (1) this court has subject matter jurisdiction over plaintiff's challenge under 42 U.S.C. § 405(g), *Taddonio v. Heckler*, 607 F.Supp. 620, (E.D.Pa. 1985); *Taddonio v. Heckler*, No. 83–5600 (E.D.Pa. April 9, 1984); and (2) plaintiff's motion to certify a class consisting of

the SSI beneficiaries whose benefits have been reduced or terminated based on non-medical eligibility factors and who, within 10 days of the reconsideration decision requested a hearing before an Administrative Law Judge

was denied. The court found that plaintiff's proffered common issue of law was not common to all members of the proposed class and that plaintiff's claims differed from those of other class members. *Taddonio v. Heckler*, 607 F.Supp. 620 (E.D. Pa.1985).

Turning now to the merits in the present case, the court adopts and applies, as it must, the well known standard of summary judgment under Fed.R.Civ.P. 56.

■ The parties do not contest that plaintiff has a Fifth Amendment due process "property" interest in the continued receipt of SSI. That plaintiff has such an interest is well established. *See Mathews v. Eldridge*, 424 U.S. 319, 322, 96 S.Ct. 893, 896, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Whether the process afforded plaintiff by the statute and regulations is all that is due is contested. Thus, at the heart of this case, like other Social Security Act due process cases, is not the issue of whether process is due, but, whether the process afforded plaintiff is constitutionally adequate. Here, as in other due process

cases, the due process standard is flexible and depends upon the surrounding circumstances and existing procedural protections. In particular, the appropriate due process analysis focuses on the balancing of three factors. This test was set forth in *Mathews v. Eldridge, supra,* as follows:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Before this test is addressed, a brief description of the procedure afforded plaintiff is appropriate.

### A. *The Procedure*

■ Federal government agencies administer the Supplemental Security Income program. Claims representatives at the District Offices of the Social Security Administration have the responsibility to take claims, authorize payments, and do post-entitlement work. Post-entitlement work presumably includes the developing of information on post-entitlement claims, interviewing of the claimant, and determining whether claimant's eligibility is continuing. A file is kept for each case. Different representatives may conduct, without any coordination of effort with other representatives, the post-entitlement work and add to the file. Representatives become involved in the particular case at random. As a result, at any time, any representative, including those who have not before seen the recipient's file, nor seen nor talked

with the recipient, could make the initial determination terminating the recipient's benefits.

Notice of the adverse initial determination is required by the statute and the regulations. 20 C.F.R. § 416.1421. A 60 day appeal period begins to run after the recipient receives notice of the initial determination. In the event that an initial determination adverse to the recipient's interest is made, the recipient may request reconsideration within 60 days after the date on which the recipient received notice of initial determination. 20 C.F.R. § 416.1409(a); *see also* 20 C.F.R. § 416.1425(a)(3). If the recipient does not request reconsideration within the first 10 days of the appeal period, the recipient's benefits are terminated. 20 C.F.R. § 416.1336(b).

As part of the reconsideration process of post-eligibility claims, SSI recipients who have been terminated for non-medical reasons, including those terminated for SGA [1] related reasons, can request a procedure from three available methods: a case review; an informal conference; or a formal conference.[2] 20 C.F.R. § 416.1415. The procedure can be chosen by the recipient and is conducted, and the decision is rendered at this reconsideration stage, by a claim representative, but cannot be decided by the claim representative who rendered the initial termination decision. If the recipient chooses reconsideration by the case review method, the recipient can review the evidence in the Secretary's files and can present additional written and oral evidence. If the recipient chooses the informal conference, the recipient can present witnesses at such a conference and a summary of the proceeding becomes part of the case record. If the formal conference is the method of reconsideration chosen, the recipient can present witnesses, request the Secretary to subpoena adverse witnesses and relevant documents, and cross-examine

---

1. SGA is the designation used in the Social Security field to denote "Substantial Gainful Activity."

2. Recipients whose eligibility is ruled to have ceased for medical reasons are immediately allowed a hearing before an ALJ prior to the

termination of benefit payments. Since the class of plaintiffs in this case includes only those terminated for non-medical reasons, the court focuses only on the procedural due process rights afforded to them.

adverse witnesses. A summary of the formal conference also becomes part of the case record.

### B. *The Mathews v. Eldridge Test: Plaintiff's Interest*

It is with respect to this first factor that the weight of the plaintiff's argument is heaviest. Plaintiff analogizes this case to *Goldberg v. Kelly* and distinguishes *Mathews v. Eldridge*. Plaintiff argues that his situation is identical to the situation of plaintiff in *Goldberg v. Kelly*, and therefore, this case should be controlled by *Goldberg v. Kelly*.

In *Goldberg v. Kelly*, the Court was concerned with federal and state agencies' failures to give pretermination hearings under the federally assisted program of "Aid to Families with Dependent Children," Social Security Act of 1935, 49 Stat. 627, as amended, 42 U.S.C. §§ 601–610 (1964 ed. and Supp. IV), and "New York State's General Home Relief Program," N.Y.Social Welfare Law §§ 157–165 (1966), since July 1, 1967, Social Services Law §§ 157–166. 397 U.S. at 256, 90 S.Ct. at 1014. The Court in *Goldberg v. Kelly* held that due process required a pretermination hearing because the benefits under these particular federal and state assistance programs were essential for the survival of these recipients. The Court emphasized that the crucial factor in the decision was that

> termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

*Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). In contrast to *Goldberg v. Kelly*, the Court in *Mathews v. Eldridge* held that a pretermination hearing is not necessary for Title II disability benefits which are not based on financial need. *See* 424 U.S. at 340, 96

S.Ct. at 905. In the present case, the assistance benefits are Title XVI SSI benefits. These benefits are conferred according to financial need. In order to be eligible, the SSI claimant must show both a lack of financial resources and income as well as disability, blindness or advanced age. It is, therefore, apparent that the statute is aimed at assisting financially *needy* disabled, blind, or aged persons. Social Security Amendments of 1972, Pub.L. No. 92–603, 1972 U.S.Code Cong. & Ad.News 4989, 4992, 5012–5015. The recipient's need for monetary SSI benefits here closely approaches the recipient's need for monetary welfare benefits in *Goldberg v. Kelly*. *See Johnson v. Mathews*, 539 F.2d 1111 (8th Cir.1976). The issue is whether *Goldberg v. Kelly* controls this case.

Unlike the plaintiff welfare recipient in *Goldberg v. Kelly*, the plaintiff here has or may have resort to other governmental entitlement programs or private financial sources. *See Mathews v. Eldridge*, 424 U.S. at 342–347, n. 27, 96 S.Ct. at 906–908 n. 27; 42 U.S.C. § 1382h; 20 C.F.R. § 416.210; 20 C.F.R. § 416.262; 20 C.F.R. § 416.1332. The court finds that 42 U.S.C. § 1382h has significant and important impact on the situation of plaintiff. Under this statute, plaintiff's SSI benefits cannot be terminated merely on the basis that he is engaging in SGA. Under § 1382h(a), he would be entitled to cash benefits if his income was not found to exceed the income eligibility requirements for SSI. Furthermore, under § 1382h(b), if his income was found to exceed SSI income eligibility requirements, and he met the requirements under the section which would render him eligible for Medicaid, he would be eligible for special SSI status. Moreover, plaintiff may be eligible for other public and private assistance programs. These programs include general assistance, Medicaid, food stamps, veteran's benefits, and church and social service agencies. Accordingly, the termination of SSI benefits will not deprive plaintiff of the "very means by which to live while he waits." 397 U.S. at 264, 90 S.Ct. at 1018. Additionally, plaintiff's ability to seek "redress from the welfare bu-

reaucracy" is not destroyed because plaintiff has other available means of assistance. *Id.* Therefore, *Goldberg v. Kelly* does not control this case.

### C. The Mathews v. Eldridge Test: Procedural Error/Value of Additional Safeguards

The second factor to be considered here is the likelihood of an erroneous ruling and the value of additional procedural safeguards. In support of his position, the plaintiff sets forth statistics which he argues show that a substantial percentage of initial determinations to terminate recipients for non-medical reasons are reversed at the ALJ stage and consequently must have been wrongly decided at the reconsideration stage.

After carefully considering plaintiff's statistics, the court does not believe that the risk of erroneous termination of plaintiff's benefits at the reconsideration stage is great. This court agrees with the Court in *Mathews v. Eldridge* when it said that "statistics rarely provide a satisfactory measure of the fairness of a decision-making process." 424 U.S. at 346, 96 S.Ct. at 908. Plaintiff's statistics do not support plaintiff's position that the decision-making process is unfair. Although plaintiff tells this court that ALJs reversed 49% of the cases appealed from reconsideration, he does not tell the court the grounds for reversal. The reversals may have been on the basis of the discovery of new and additional evidence and not because the reconsideration process was unfair. Furthermore, the figures presented by plaintiff are not impressive. In 1983, 148,500 individuals were terminated for non-medical reasons including SGA, but only 16,230 of those terminations were reversed by an ALJ. When one considers all of the circumstances under which the system functions, and the fact that the portion of the reversals that may have been for reasons based on unfairness is unknown, this is a relatively small percentage of reversals that does not support plaintiff's allegation.

Also, the nature of the evidence presented at non-medical termination reconsiderations does not create a likelihood that the terminations will be erroneous. This evidence is simply based in dollar figures, and it could not be more straightforward. These cases are not the type which usually turn entirely on the credibility of witnesses or oral testimony. Thus, the court finds that the nature of the non-medical termination evidence mediates against the risk of error.

### D. The Mathews v. Eldridge Test: The Government's Interest

Conservation of fiscal and administrative resources is a prime governmental concern in all quarters. Although this factor was given little weight in *Goldberg v. Kelly*, the *Mathews v. Eldridge* Court found that it was of significant importance.

The most visible burden would be the incremental cost resulting from the increased number of hearings and the expense of providing benefits to ineligible recipients pending decision. No one can predict the extent of the increase, but the fact that full benefits would continue until after such hearings would assure the exhaustion in most cases of this attractive option. Nor would the theoretical right of the Secretary to recover undeserved benefits result, as a practical matter in any substantial offset to the added outlay of public funds. The parties submit widely varying estimates of the probable additional financial cost. We only need say that experience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial.

Significantly, the cost of protecting those whom the preliminary administrative process has identified as likely to be found undeserving may in the end come out of the pockets of the deserving since resources available for any particular program of social welfare are not unlimited.

See *Friendly, supra,* 123 U.Pa.L.Rev., at 1276, 1303.

*Mathews v. Eldridge,* 424 U.S. at 347–348, 96 S.Ct. at 909.

### E. The Mathews v. Eldridge Test: Adequacy of the Secretary's Process

Finally, the court turns to the issue of whether the process afforded plaintiff prior to termination of his benefits was adequate under the due process clause of the Fifth Amendment. The *Mathews v. Eldridge* Court stated:

> The judicial model of an evidentiary hearing is neither a required, nor even the most effective method of decisionmaking in all circumstances. The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Joint Anti-Fascist Comm. v. McGrath,* 341 U.S. [123] at 171–172 [71 S.Ct. 624 at 649, 95 L.Ed. 817 (1951)] (Frankfurter, J., concurring). All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard." *Goldberg v. Kelly,* 397 U.S., at 268–269 [90 S.Ct., at 1021] (footnote omitted), to insure that they are given a meaningful opportunity to present their case. In assessing what process is due in this case, substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals. *See Arnett v. Kennedy,* 416 U.S. [134] at 202 [94 S.Ct. 1633 at 1667–1668, 40 L.Ed.2d 15 (1974)] (White, J., concurring in part and dissenting in part). This is especially so where, as here, the prescribed procedures not only provide the claimant with an effective process for asserting his claim prior to any administrative action, but also assure a right to an evidentiary hearing, as well as to subsequent judicial review, before the denial of his claim becomes final. *Cf. Boddie v. Connecticut,* 401

U.S. 371, 378 [91 S.Ct. 780, 786, 28 L.Ed.2d 113] (1971).

*Mathews v. Eldridge,* 424 U.S. at 348–349, 96 S.Ct. at 909–910. The Court in *Goldberg v. Kelly* also gives direction. In *Goldberg v. Kelly,* the Court held that the due process clause requires that an opportunity for a pretermination "fair hearing" to determine the grounds upon which the decision to terminate the recipient's benefits were made and to determine whether the grounds are erroneous. A "fair hearing" involves the following factors: (1) timely and adequate notice must be given to the claimant detailing the legal and factual reasons for the proposed termination; (2) the claimant must have an opportunity to be heard in writing and orally; (3) the claimant must have the opportunity to confront and cross-examine witnesses; (4) the claimant must have the opportunity formally or informally to present evidence and arguments; (5) the claimant must have the opportunity to appear with counsel; and (6) the decision-maker must be impartial, he must rest his decision on legal rules and evidence adduced at the hearing, and he must set forth the reasons for his decision and the evidence upon which he relied to reach his conclusion. *See Goldberg v. Kelly,* 397 U.S. at 268, 90 S.Ct. at 1020.

After the initial determination to terminate plaintiff's SSI benefits for non-medical reasons, plaintiff had the option to request reconsideration by case review, informal conference, or formal conference. 20 C.F.R. § 416.1415. Plaintiff does not dispute that the Secretary gives adequate notice detailing the legal and factual reasons for the proposed termination well in advance of the reconsideration decision. Also, plaintiff does not dispute that the Secretary's procedures on reconsideration affords him with the opportunity to present oral and written evidence, confront and cross-examine witnesses, and make arguments. In addition, plaintiff does not assert that he does not have the opportunity to appear at the reconsideration proceeding with counsel. Moreover, plaintiff does not dispute that the decision-maker is required

to rest his reconsideration decision on legal rules and evidence adduced at the hearing or that the decision-maker has to set forth the reasons for his decision and the evidence upon which he relied to reach his conclusion. Plaintiff's entire claim is based on the assertion that the hearing is unfair because the claims representative is not impartial at the starting point of the review procedures.

The Court in *Goldberg v. Kelly* discusses briefly the issue of impartiality of the decision-maker.

> We agree with the District Court that prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review.

*Goldberg v. Kelly*, 397 U.S. at 271, 90 S.Ct. at 1022. Applying this analysis to the present case, the court concludes that the decision-maker at the reconsideration stage is not necessarily biased against the recipient. First, it is not required that the decision-maker be an ALJ. Claims representatives or another welfare official are not automatically precluded from being the decision-maker. Secondly, claims representatives who participated in the initial determination are barred by the Secretary's regulations from taking part in the reconsideration decision. The court concludes that the decision-maker may be impartial, and, thus, all the elements required for a pretermination "fair hearing" are satisfied.

CONCLUSION

The Secretary's procedure for the termination of SSI benefits for non-medical reasons do not violate the due process clause.