[37 NE3d 82, 16 NYS3d 25]

Eric M. Berman, P.C., et al., Respondents, v City of New York et al., Appellants.

Argued June 3, 2015; decided June 30, 2015

**POINTS OF COUNSEL**

*Zachary W. Carter, Corporation Counsel*, New York City (*Janet L. Zaleon, Richard Dearing* and *Nicholas R. Ciappetta* of counsel), for appellants. I. Local Law No. 15 (2009) of City of New York is not preempted by the Judiciary Law. (*DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91; *Matter of Zuckerman*, 20 NY2d 430; *Matter of Wong*, 275 AD2d 1; *Matter of Lenahan*, 34 AD3d 13; *Matter of Rosenblum v New York City Conflicts of Interest Bd.*, 18 NY3d 422; *Zakrzewska v New School*, 14 NY3d 469; *Aponte v Raychuk*, 140 Misc 2d 864, 160 AD2d 636; *Guggenheimer v Ginzburg*, 43 NY2d 268; *Matter of Roth v Turoff*, 127 Misc 2d 998.) II. Local Law No. 15 (2009) of City of New York does not violate New York City Charter § 2203 (c). (*Mahler v Gulotta*, 297 AD2d 712, 98 NY2d 615.)

*Rivkin Radler LLP*, Uniondale (*Max S. Gershenoff, Evan H. Krinick* and *Michael P. Versichelli* of counsel), for respondents. I. Local Law No. 15 (2009) of City of New York is in direct conflict with sections 53 and 90 of the Judiciary Law, and sections 10 and 11 of the Municipal Home Rule Law, and therefore is preempted. (*DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91; *Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead*, 91

AD3d 126; *Zakrzewska v New School*, 14 NY3d 469; *New York State Club Assn. v City of New York*, 69 NY2d 211, 487 US 1; *Forti v New York State Ethics Commn.*, 75 NY2d 596; *People ex rel. Karlin v Culkin*, 248 NY 465; *Matter of Zuckerman*, 20 NY2d 430, 390 US 925; *Matter of 749 Broadway Realty Corp. v Boyland*, 1 Misc 2d 575, 1 AD2d 819, 3 NY2d 737; *Goehler v Cortland County*, 70 AD3d 57.) II. New York State's enactment of a comprehensive and detailed regulatory scheme regarding attorney licensing, practice, and conduct demonstrates an intent to preempt the field. (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91; *Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead*, 91 AD3d 126; *People v Diack*, 24 NY3d 674; *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 141 AD2d 468, 74 NY2d 761; *People v De Jesus*, 54 NY2d 465; *Matter of Chwick v Mulvey*, 81 AD3d 161; *Forti v New York State Ethics Commn.*, 75 NY2d 596; *People v Law Offs. of Andrew F. Capoccia*, 289 AD2d 650.) III. Local Law No. 15 (2009) of City of New York violates New York City Charter § 2203 (c). (*Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475.) IV. Local Law No. 15 (2009) of City of New York is unconstitutionally vague. (*Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235; *People v Stuart*, 100 NY2d 412.)

*Eric T. Schneiderman, Attorney General*, New York City (*Karen W. Lin, Barbara D. Underwood* and *Anisha S. Dasgupta* of counsel), for Attorney General of the State of New York, amicus curiae. Local Law No. 15 (2009) of City of New York is not preempted by the Judiciary Law. (*Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91; *New York State Club Assn. v City of New York*, 69 NY2d 211, 487 US 1; *Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500; *Matter of Cohen*, 7 NY2d 488; *Matter of Wong*, 275 AD2d 1; *Matter of Lenahan*, 34 AD3d 13; *People v Law Offs. of Andrew F. Capoccia*, 289 AD2d 650; *Forti v New York State Ethics Commn.*, 75 NY2d 596; *Matter of Bethpage Water Dist. v Daines*, 67 AD3d 1088; *People v Title Guar. & Trust Co.*, 227 NY 366.)

*Susan Ann Silverstein, AARP Foundation Litigation*, Washington, D.C., for AARP and others, amici curiae. I. Local Law No. 15 (2009) of City of New York does not conflict with the judiciary's regulation of the practice of law. (*Bates v State Bar of Ariz.*, 433 US 350; *Milavetz, Gallop & Milavetz, P. A. v United States*, 559 US 229; *Heintz v Jenkins*, 514 US 291; *Gold-*

*farb v Virginia State Bar*, 421 US 773; *United States v National Socy. of Professional Engrs.*, 389 F Supp 1193; *Cohen v State of New York*, 94 NY2d 1; *McDermott v Marcus, Errico, Emmer & Brooks, P.C.*, 775 F3d 109; *Buckley v Valeo*, 424 US 1; *Miller v Upton, Cohen & Slamowitz*, 687 F Supp 2d 86; *Sykes v Mel S. Harris & Assoc. LLC*, 780 F3d 70.) II. Numerous state legislatures impose regulatory requirements on attorney-operated debt collection agencies without conflicting with the judiciary's prerogative to regulate the practice of law. (*Mandelas v Gordon*, 785 F Supp 2d 951; *McDermott v Marcus, Errico, Emmer & Brooks, P.C.*, 775 F3d 109; *Heintz v Jenkins*, 514 US 291.)

*MFY Legal Services, Inc.*, New York City (*Jeanette Zelhoff, Carolyn E. Coffey* and *Ariana Lindermayer* of counsel), *Theodora Galacatos, Feerick Center for Social Justice*, New York City, and *New Economy Project, Inc.*, New York City (*Susan Shin* of counsel), for Bromberg Law Office, P.C. and others, amici curiae. Local Law No. 15 (2009) of City of New York is a permissible and necessary municipal regulation of licensed attorneys. (*Greco v Trauner, Cohen & Thomas, L.L.P.*, 412 F3d 360; *Gonzalez v Kay*, 577 F3d 600; *Lesher v Law Offs. of Mitchell N. Kay, P.C.*, 650 F3d 993; *Heintz v Jenkins*, 514 US 291; *Matter of Zuckerman*, 20 NY2d 430; *Matter of Wong*, 275 AD2d 1; *Forti v New York State Ethics Commn.*, 75 NY2d 596; *People v Law Offs. of Andrew F. Capoccia*, 289 AD2d 650; *Aponte v Raychuk*, 140 Misc 2d 864; *Nix v Whiteside*, 475 US 157.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

Plaintiffs, law firms involved in debt collection, commenced this action in federal district court to challenge certain amendments to the New York City Administrative Code (Local Law No. 15 [2009] of City of NY) pertaining to debt collection activities. The Second Circuit certified for our review the issue of whether the local law is preempted by the State's statutory authority to regulate the conduct of attorneys. We conclude that the local law is not preempted.

In 1984, the City Council enacted Local Law No. 65 (1984) of City of New York, a previous version of the provision at issue here, which imposed a licensing requirement on debt collection agencies. The accompanying legislative declaration pointed out that a licensing requirement was warranted, in part, because "there is a minority of unscrupulous collection agencies in

operation that practice abusive tactics such as threatening delinquent debtors, or calling such people at outrageous times of the night. These actions constitute tactics which would shock the conscience of ordinary people" (Administrative Code of City of NY § 20-488, formerly § B32-97.0). The legislation required those acting as debt collection agencies to obtain a license, which was valid for a two-year period at an annual fee of $75 (*see* Administrative Code of City of NY § 20-491, formerly § B32-99.0).

As initially enacted, a "debt collection agency" was defined as "a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another" (Administrative Code of City of NY § 20-489 [a], formerly § B32-97.1 [c]). The provision included a specific exclusion for "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" (Administrative Code of City of NY § 20-489 [a] [5], formerly § B32-97.1 [c] [5]).

The debt collection industry, however, continued to grow and the existing licensing requirement was no longer adequate to address the problems presented. Most strikingly, consumer debt was being purchased at a steep discount by third parties who would then use other entities, including debt collection law firms that were exempt from the licensing requirement, to pursue their claims. Indeed, about 90% of the 300,000 consumer credit actions filed annually in Civil Court were brought by these debt bundlers (rather than the originating creditor). The City Council heard testimony that a significant portion of the collection actions were not supported by valid evidence, but that they went largely unchallenged because the debtors either failed to appear or were unrepresented.

Local Law 15, enacted in 2009, amended the debt collection legislation in several ways. Significantly, it expanded the definition of "debt collection agency" to "include a buyer of delinquent debt who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes or other means to collect or attempt to collect such debt" (Administrative Code of City of NY § 20-489 [a]). The amendments continued a limited exemption for attorneys or law firms that were "collecting a debt in such capacity on behalf of and in the name of a client solely through activities that may only be performed by a licensed attorney" (Administrative Code of City of NY § 20-489 [a] [5]).

The exemption, however, did not cover "any attorney-at-law or law firm or part thereof who regularly engages in activities traditionally performed by debt collectors, including, but not limited to, contacting a debtor through the mail or via telephone with the purpose of collecting a debt or other activities as determined by rule of the commissioner" (Administrative Code of City of NY § 20-489 [a] [5]).

Local Law 15 also introduced certain required practices for debt collection agencies. For instance, "[i]n any permitted communication with the consumer," the agency is required to provide: (1) a call-back number to a phone that is answered by an actual person; (2) the agency's name; (3) the name of the original creditor; and (4) the amount of the outstanding debt (*see* Administrative Code of City of NY § 20-493.1 [a]). The local law prohibits debt collection agencies from attempting to collect, or contacting a consumer regarding a debt after the consumer requests verification of the amount owed, until the agency provides written documentation setting forth the original creditor and the amount remaining due (*see* Administrative Code of City of NY § 20-493.2 [a]). Additional penalties of $100 are imposed for each contact made with a consumer in violation of the license requirement of section 20-490 (*see* Administrative Code of City of NY § 20-494 [a]).

Plaintiffs commenced this action in federal district court raising several causes of action and seeking to invalidate Local Law 15. The district court granted plaintiffs' motion for summary judgment in part, holding that the local law was in direct conflict with the Judiciary Law and invalid to the extent that it purported to regulate the conduct of attorneys (*see* 895 F Supp 2d 453, 469 [ED NY 2012]). Similarly, the court determined that the local law violated the City Charter insofar as it gave the New York City Department of Consumer Affairs Commissioner authority to license or regulate attorneys (*see* 895 F Supp 2d at 470). The court denied both sides summary judgment on plaintiffs' Commerce Clause claim, concluding that issues of fact existed, but granted the City's motion for summary judgment as to the remaining causes of action.

The Second Circuit, observing that there were significant policy concerns implicated by Local Law 15, certified two questions for our review:

"1. Does Local Law 15, insofar as it regulates attorney conduct, constitute an unlawful encroach-

ment on the State's authority to regulate attorneys, and is there a conflict between Local Law 15 and Sections 53 and 90 of the New York Judiciary Law?

"2. If Local Law 15's regulation of attorney conduct is not preempted, does Local Law 15, as applied to attorneys, violate Section 2203(c) of the New York City Charter?" (770 F3d 1002, 1009-1010 [2d Cir 2014]).

We accepted certification (24 NY3d 1029 [2014]).

Municipalities generally have the authority to adopt local laws to the extent that they are not inconsistent with either the State Constitution or any general law (see DJL Rest. Corp. v City of New York, 96 NY2d 91, 94 [2001]; NY Const, art IX, § 2 [c] [ii]; Municipal Home Rule Law § 10 [1]). A local law will be preempted either where there is a direct conflict with a state statute (conflict preemption) or where the legislature has indicated its intent to occupy the particular field (field preemption) (see DJL Rest., 96 NY2d at 95). "We have held that a local law is inconsistent 'where local laws prohibit what would be permissible under State law, or impose prerequisite additional restrictions on rights under State law, so as to inhibit the operation of the State's general laws' " (Zakrzewska v New School, 14 NY3d 469, 480 [2010] [citation omitted]).

The Judiciary Law confers broad authority upon the courts to regulate the practice of law. Under section 53, this Court has the power to adopt rules concerning the admission of attorneys to practice in this state. In addition,

> "[t]he supreme court shall have power and control over attorneys and counsellors-at-law . . . and the appellate division of the supreme court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice" (Judiciary Law § 90 [2]).

Plaintiffs assert both conflict and field preemption in connection with the argument that Local Law 15 is preempted by the Judiciary Law. The local law, by its terms, governs the conduct of debt collection agencies. Although attorneys that are acting in a debt collecting capacity may fall within its penumbra, it

does not purport to regulate attorneys as such. In fact, it clearly states that it does not pertain to attorneys who are engaged in the practice of law on behalf of a particular client. There is no express conflict between the broad authority accorded to the courts to regulate attorneys under the Judiciary Law and the licensing of individuals as attorneys who are engaged in debt collection activity falling outside of the practice of law and, thus, the local law does not impose an additional requirement for attorneys to practice law. Rather, the regulatory schemes can be seen as complementary to, and compatible with, one another.

There is some concern that the local law, in distinguishing between the practice of law and debt collection, potentially encompasses some activity that lawyers may also engage in while representing clients—e.g., "contacting a debtor through the mail or via telephone with the purpose of collecting a debt or other activities." In that respect, it presents a somewhat closer question than a case where an attorney is subject to regulation for conduct that is plainly nonlegal or outside the practice of law (*see Aponte v Raychuk*, 160 AD2d 636 [1st Dept 1990]). However, an attorney who is retained by a client who is a creditor may make phone calls or send letters in the course of that representation in an attempt to recover specific amounts due to that client without being subject to regulation under Local Law 15. There is a significant and meaningful distinction between such conduct and conduct that is typical of a debt collection agency—making high volume collection calls at off-hours and sending boilerplate "dunning" letters demanding payment without details of the source of the debt or the actual amount due.

It may be more difficult, in certain cases, to determine where to draw the line between debt collection and the practice of law. In those instances, federal case law under the Fair Debt Collection Practices Act (FDCPA) (15 USC § 1692 *et seq.*) will provide some guidance. Although the issue in the federal context is somewhat different—whether a particular communication is "from an attorney" (15 USC § 1692e [3])—the concept is similar. For instance, the circuit courts have established that the transmission of mass-produced, debt-collection mailings on attorney letterhead, where the attorney did not personally prepare, review or sign the letters is considered debt collection (*see e.g. Lesher v Law Offs. of Mitchell N. Kay, P.C.*, 650 F3d 993, 999 [3d Cir 2011]; *Miller v Wol-*

*poff & Abramson, L.L.P.*, 321 F3d 292, 301 [2d Cir 2003] ["some degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FD-CPA"]; *Avila v Rubin*, 84 F3d 222, 229 [7th Cir 1996] ["The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action"]). Similarly, where attorneys or law firms seek to recover debt on behalf of passive debt buyers, without exercising any professional judgment as to the validity of the debt or the amount owed, it falls outside the practice of law and would, instead, qualify as "regular[ ] engage[ment] in activit[y] traditionally performed by debt collectors."

Moreover, the courts' authority to regulate attorney conduct does not evince an intent to preempt the field of regulating nonlegal services rendered by attorneys. "Intent to preempt the field may 'be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area' " (*People v Diack*, 24 NY3d 674, 679 [2015] [citations omitted]). Although the courts may have preempted the field of regulating attorney misconduct, that authority does not extend to all nonlegal aspects of attorney behavior, which can be governed by both civil and criminal law, including regulatory proscriptions. To the extent that the courts have exercised some authority over nonlegal services provided by attorneys (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 5.7), the regulation in that area is not "so detailed and comprehensive as to imply that" the field has been preempted (*see e.g. Matter of Casado v Markus*, 16 NY3d 329, 337 [2011]).

We decline to reach the second question, which we reformulate in accordance with the City's request to read as follows: "If Local Law 15's regulation of attorney conduct is preempted, does Local Law 15, as applied to attorneys, also violate Section 2203 (c) of the New York City Charter?" In sum, we conclude that there is no conflict between Local Law 15 and the State's authority to regulate attorneys and, in the absence of such conflict, the City should not be prevented from taking permissible steps to curb abusive debt collection practices.

Accordingly, the first certified question should be answered in the negative and the second certified question, as reformulated, should be answered in accordance with this opinion.

FAHEY, J. (dissenting). The distinction between the activities of an attorney collecting a debt on behalf of a client and an at-

torney engaging in "activities traditionally performed by debt collectors" (Administrative Code of City of NY § 20-489 [a] [5]) is, from a regulatory point of view, a distinction without a difference. These activities are part of the practice of law. The State has demonstrated its intent to exclusively occupy the field of the licensing of attorneys and the regulation of the practice of law. Unlike the majority, I conclude that Local Law No. 15 (2009) of City of New York regulates in that field and thus is preempted by state law pursuant to the doctrine of field preemption. I therefore dissent.

## I.

"Broadly speaking, State preemption occurs in one of two ways—first, when a local government adopts a law that directly conflicts with a State statute and second, when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility" (*DJL Rest. Corp. v City of New York*, 96 NY2d 91, 95 [2001] [citations omitted]; *see Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 377 [1989]). "[I]n the absence of an express conflict, whether the local law is invalid as inconsistent with the State's overriding interest turns on whether the State has preempted the entire field . . . and thus precluded any further regulation by localities" (*Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 98 [1987]).

> "Where it is determined that the State has preempted an entire field, a local law regulating the same subject matter is deemed inconsistent with the State's overriding interests because it either (1) prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe or (2) imposes additional restrictions on rights granted by State law" (*id.* at 97 [citations omitted]).

If a local law were permitted to operate in a field preempted by state law, the local law "would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns" (*id.*; *see Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500, 505 [1991]).

"The State Legislature may expressly articulate its intent to occupy a field, but it need not. It may also do so by implication" (*DJL Rest. Corp.*, 96 NY2d at 95). As this Court recently recognized in *People v Diack* (24 NY3d 674 [2015]),

"[t]he doctrine of field preemption prohibits a municipality from exercising a police power 'when the Legislature has restricted such an exercise by preempting the area of regulation' (*New York State Club Assn. v City of New York*, 69 NY2d 211, 217 [1987], *affd* 487 US 1 [1988]; *see Albany Area Bldrs. Assn.*, 74 NY2d at 377). Although field preemption may be 'express' as evidenced by the legislature's stated directive, it may also 'be implied from a declaration of State policy by the Legislature or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area' (*Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 105 [1983] [citations omitted]). Intent to preempt the field may 'be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area' (*Albany Area Bldrs. Assn.*, 74 NY2d at 377, citing *Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347 [1972])" (*Diack*, 24 NY3d at 679).

This Court has determined that the State has intended to occupy an entire field of regulation, thus prohibiting any local government regulation in that field, in a range of fields, including: the identification, monitoring, and treatment of sex offenders (*see Diack*, 24 NY3d at 680-685); the review of area zoning variance applications (*see Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395, 399-403 [2003]); highway funding (*see Albany Area Bldrs. Assn.*, 74 NY2d at 377-379); the siting of major steam electric generating plants (*see Consolidated Edison*, 60 NY2d at 105-107); and the "regulation of the practice of medicine in general and the performance of abortions in particular" (*Robin*, 30 NY2d at 350).

Here, as framed in the Second Circuit's first certified question to this Court, the relevant field is the State's authority to regulate attorneys and the practice of law (*see Eric M. Berman, P.C. v City of New York*, 770 F3d 1002, 1007-1009 [2d Cir 2014]). I conclude that the State has reserved to itself the exclusive authority to regulate the licensing of attorneys and the practice of law within its borders.

With respect to the licensing of attorneys, Judiciary Law § 53 designates to this Court the authority to "adopt, amend,

or rescind rules not inconsistent with the constitution or statutes of the state, regulating the admission of attorneys and counsellors at law, to practice in all the courts of record of the state" (*id.* § 53 [1]). Section 53 further requires this Court to "prescribe rules providing for a uniform system of examination of candidates for admission to practice as attorneys and counsellors" (*id.* § 53 [3]). Judiciary Law § 90 (2) gives the Supreme Court of the State "power and control over attorneys and . . . all persons practicing or assuming to practice law," and the Appellate Division the power to discipline attorneys. Judiciary Law article 15 contains multiple statutes governing the examination and admission of attorneys to the bar, the registration of attorneys, and the conduct of attorneys practicing within the state (*see* Judiciary Law § 460 *et seq.*). Statewide regulations contain the Court's rules for the admission of attorneys and many other regulations governing the licensing and practice of attorneys (*see e.g.* 22 NYCRR part 520).

Moreover, with respect to the practice of law by attorneys admitted to practice in the state, the Judiciary Law contains many rules with which attorneys admitted to practice must comply (*see e.g.* Judiciary Law § 90; Judiciary Law art 15). In addition, every New York attorney must comply with the Rules of Professional Conduct, a comprehensive set of regulations governing the conduct of attorneys admitted to practice in the state (*see* 22 NYCRR part 1200).[1]

Furthermore, as we stated in *Diack*, this Court may infer field preemption "from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area" (24 NY3d at 679 [internal quotation marks omitted]). Statewide uniformity in the field of the licensing of attorneys and the practice of law is of the utmost importance. Taken to

---

1. It is not only statutes enacted by the State Legislature that may support a conclusion that state regulation has preempted a particular field. The legislature's designation of authority to various branches of the government and state agencies is also relevant. For example, in *Diack*, this Court held that field preemption applied based not only on various state statutes, but also based upon legislation granting certain state agencies the authority to promulgate rules regarding the placement and housing of sex offenders (*see Diack*, 24 NY3d at 682-683). Similarly, this Court has recognized that in addition to "regulat[ing] many aspects of the practice of law in this State," the legislature has also granted to the judiciary certain powers to regulate the admission of attorneys and the practice of law (*Forti v New York State Ethics Commn.*, 75 NY2d 596, 615 [1990]).

its logical extreme, if this field were open for local government regulation, New York City could require its own bar exam for attorneys seeking to practice within its borders, or Buffalo could develop its own rules of professional conduct for attorneys practicing in that city. The need for statewide uniformity in this area is beyond cavil.

Inasmuch as the majority concludes that Local Law 15 "does not purport to regulate attorneys as such" (majority op at 691), the majority does not specifically address whether the State has demonstrated its intent to exclusively occupy the field of the licensing of attorneys and the regulation of the practice of law. I doubt, however, that the majority would disagree with the conclusion that the State has demonstrated its intent to exclusively occupy that field, inasmuch as the majority acknowledges that the "Judiciary Law confers broad authority upon the courts to regulate the practice of law" and "the courts may have preempted the field of regulating attorney miscon-duct" (majority op at 690, 692). Indeed, defendants concede that Judiciary Law § 90 "does authorize the courts to regulate the field of the practice of law" but insist that there is no state intent "to preclude localities from regulating in the distinct field of *nonlegal* debt-collection activities" (emphasis added). I part ways with the majority with respect to its conclusion that Local Law 15 regulates only nonlegal services rendered by attorneys and that it does not purport to regulate attorneys in their practice of law.

## II.

Local Law 15 exempts from its reach "any attorney-at-law or law firm collecting a debt in such capacity on behalf of and in the name of a client solely through activities that may only be performed by a licensed attorney" (Administrative Code of City of NY § 20-489 [a] [5]). This exemption, however, is immediately followed by an exception so expansive that it swallows the exemption: "any attorney-at-law or law firm or part thereof who regularly engages in activities traditionally performed by debt collectors" is required to obtain a license from the New York City Department of Consumer Affairs (DCA) before collecting debts from New York City residents and to comply with the law's prohibited and required debt collection practices (*id.*). The law provides no guidance whatsoever on how the term "regularly" will be interpreted by DCA. With respect to the interpretation of "activities traditionally performed

by debt collectors," the following example is provided: "contacting a debtor through the mail or via telephone with the purpose of collecting a debt" (id.). "[O]ther activities as determined by rule of the commissioner" may also constitute activities traditionally performed by debt collectors (id.).

Defendants insist that Local Law 15 was not intended to target attorneys who, as part of their regular practice, represent clients in attempting to collect debts lawfully owed because the law does not apply when a licensed attorney "exercis[es] legal judgment on behalf of a client to determine whether a particular consumer owes a debt" and then takes actions in accordance with that exercise of legal judgment. Rather, defendants insist that Local Law 15 was meant to target only those attorneys who engage "in the nonlegal practices of debt collection agencies—such as high-volume collection calls, deployment of automated telephone calls, or mailing of routine dunning letters."

Even if Local Law 15 was *intended* to regulate only those activities, however, the law, as written, is not narrowly tailored to capture *only* those activities within its reach. The language defendants ask the Court to read into the text of the law simply does not exist. Contacting a debtor through the mail or via telephone with the purpose of collecting a debt—the only example the law provides of "activities traditionally performed by debt collectors" (Administrative Code § 20-489 [a] [5])—is, of course, an activity that attorneys who represent creditors generally perform on a daily basis. In addition, contacting a debtor through the mail or via telephone with the purpose of collecting a debt is not an activity "that may only be performed by a licensed attorney" (id.).

The sweeping breadth of the language of Local Law 15 compels me to disagree with defendants that this case is distinguishable from *Roth v Turoff* (124 AD2d 471 [1st Dept 1986], *affg for reasons stated below* 127 Misc 2d 998 [Sup Ct, Bronx County 1985]). *Roth* concerned a New York City law requiring the licensing of taxicab brokers that defined a taxicab broker "as one 'who, for another . . . acts as an agent or intermediary in negotiating the purchase or sale of a taxicab' " (127 Misc 2d at 999, quoting former Administrative Code § 2325 [a]). Supreme Court held that "[t]aking this definition at face value it is clear that no attorney could possibly represent either the buyer or seller of a taxicab without first obtaining a license from the Commission and complying with the requirements of

such licensing" (*id.*). Appearing to rely on field preemption principles, the court held that "the qualifications for admission, the rules governing conduct of attorneys, the proscriptions imposed with respect to practicing law without a license are and have traditionally been regulated by the State Legislature and the courts," and, "[t]hat being so, no local legislature has the power to define new limitations on the practice of the law" (*id.* at 1000). The court further stated that "[i]f indeed there is need to impose the strictures embodied in the local law—as it affects attorneys—application for such change should be directed to the body empowered to do so; the State Legislature" (*id.*).

Local Law 15, by its plain terms, could be interpreted to apply to any attorney who regularly represents creditors in collecting debts, and, in the course of that representation, regularly engages in any activity that could be performed by someone other than a licensed attorney and also is "traditionally performed by debt collectors," such as "contacting a debtor through the mail or via telephone with the purpose of collecting a debt" (Administrative Code § 20-489 [a] [5]). Any such attorney who neglects to obtain a license from DCA could be subject to a $100 fine each time he or she contacts a New York City debtor without a valid DCA license (*see* Administrative Code §§ 20-490; 20-494 [a]). In that respect, Local Law 15 purports to regulate the licensing of attorneys and the practice of law and is therefore preempted by state regulation. Defendants' assertion that *Roth* is distinguishable because Local Law 15 targets attorneys who are not engaging in legal activities and are instead working solely as "debt collectors" is simply not supported by the plain language of the law (*see Roth*, 127 Misc 2d at 999 ["Nor can this court read into the local law the exemption argued for by petitioner. The language of the legislation is clear and unambiguous and this court is bound 'to give effect to the plain meaning of the words used' "], quoting *Eaton v New York City Conciliation & Appeals Bd.*, 56 NY2d 340, 345 [1982]).

Furthermore, as the Second Circuit noted,

> "Local Law 15 could be read as not providing a clear basis for differentiating between attorneys who attempt to collect debts 'solely through activities that may only be performed by a licensed attorney' and those who attempt to collect debts by 'regularly

engag[ing] in activities traditionally performed by debt collectors.' Similarly, it is not clear what standard to apply to an attorney who does both; nor is it entirely clear what are the debt collection 'activities that may only be performed by a licensed attorney' " (770 F3d at 1007 n 2).

Defendants have provided no satisfactory response to allay these concerns. Local Law 15 provides the DCA Commissioner with the power to make rules and regulations to implement and enforce the law (see Administrative Code § 20-493). Presumably, DCA will decide whether any particular attorney is collecting a debt "solely through activities that may only be performed by a licensed attorney" or through "activities traditionally performed by debt collectors" (id. § 20-489 [a] [5]). The text of the law itself provides no assurances that DCA's interpretation will not encroach upon the State's exclusive authority to license attorneys and to regulate the practice of law. There are distinctions between the practice of law and conduct such as "making high volume collection calls at off-hours and sending boilerplate 'dunning' letters demanding payment without details of the source of the debt or the actual amount due" (majority op at 691); however, nothing in the text of Local Law 15 itself requires DCA to interpret the law to apply only to those activities.

## III.

That the federal courts have been able to draw distinctions between the practice of law and debt collection activities does not save Local Law 15 from state preemption. The federal government, of course, is under no obligation to steer clear of regulating in a field that New York State has wholly occupied so as to prevent local regulation. Under the supremacy principles applicable to our system of government, if the federal courts' interpretation of the federal Fair Debt Collection Practices Act (FDCPA) tangentially encroaches on New York State's authority to regulate attorneys, New York State courts cannot declare the FDCPA to be invalid under a preemption analysis. As the District Court noted here, the same cannot be said for a local law that regulates in a field that the State has demonstrated its intent to exclusively occupy (see Eric M. Berman, P.C. v City of New York, 895 F Supp 2d 453, 473 [ED NY 2012] ["Unlike the New York City Council, the federal government is not obligated to draft its statutes so as to comport with New

York law"]). Indeed, the United States Supreme Court has held that the FDCPA's definition of "debt collector" applies to an attorney "who regularly, through litigation, tries to collect consumer debts" (*Heintz v Jenkins*, 514 US 291, 292 [1995] [internal quotation marks and emphasis omitted]).[2] Thus, even an attorney "collecting a debt in such capacity on behalf of and in the name of a client solely through activities that may only be performed by a licensed attorney" (Administrative Code § 20-489 [a] [5]), whom Local Law 15 purports to exempt from its reach, is generally required to comply with the federal FDCPA.

Defendants' reliance on other New York State statutes and regulations governing debt collection that may tangentially affect the practice of law is misplaced. General Business Law article 29-H prohibits creditors or their agents from engaging in certain abusive debt collection tactics and authorizes the Attorney General to enforce its provisions (*see* General Business Law §§ 601, 602 [2]). Recently-promulgated regulations from the State Department of Financial Services (DFS) also regulate debt collectors (*see* 23 NYCRR 1.1 *et seq.*).[3] The State, however, may regulate attorneys and the practice of law in the context of debt collection in any manner it sees fit. Indeed, plaintiffs do not dispute that a bill with precisely the same text as Local Law 15, but passed by the State Legislature instead of the New York City Council, would be perfectly lawful. This is precisely the impact of the field preemption doctrine: the State may regulate in the field, but local governments may not.

Furthermore, the fact that attorneys are required to comply with other laws of general regulation, such as those contained within the Penal Law or the Executive Law, is immaterial. Setting aside the fact that these are *state* laws, attorneys obviously must comply with certain laws of general regulation, such as tax laws, laws governing business formation, and laws

---

2. The FDCPA was amended one year after *Heintz* to exempt "a formal pleading made in connection with a legal action" from certain rules regarding written communications with a debtor (15 USC § 1692e [11]). For other communications, however, the FDCPA applies to attorneys collecting debts on behalf of their clients (*see Jerman v Carlisle, McNellie, Rini, Kramer & Ulrich*, 559 US 573, 600 [2010] ["To the extent the FDCPA imposes some constraints on a lawyer's advocacy on behalf of a client, it is hardly unique in our law"]).

3. The DFS regulations contain specific exemptions for activities that generally fall within the ambit of litigation, including "collecting on or enforcing a money judgment" (23 NYCRR 1.1 [e] [7] [iii]).

governing hiring and employment practices. A local law that affects an attorney's business practices may or may not be preempted by state regulation, depending on the particular activities the local law at issue seeks to regulate, the state regulation of such activities in effect at the time, and the surrounding circumstances.[4]

Local Law 15, however, is not simply a law of general regulation with which attorneys and non-attorneys alike must comply. Rather, by its plain terms, Local Law 15 regulates the licensing of attorneys and the practice of law by requiring attorneys who regularly engage in traditional debt collection activities to obtain a DCA license and comply with its terms (*see Eric M. Berman, P.C.*, 895 F Supp 2d at 472 ["(W)hile . . . there may well be some activities, like driving a taxi cab or operating a fruit stand, that are so unrelated to the practice of law that they may be regulated by municipalities, even if performed by an attorney, there can be no material factual dispute that the activities Local Law 15 seeks to regulate lie far from this line"]). Local Law 15 imposes additional licensing and practice obligations on certain attorneys that do not otherwise exist under state law (*see Jancyn Mfg. Corp.*, 71 NY2d at 97).

The invalidation of Local Law 15 as applied to attorneys would not give New York attorneys carte blanche to threaten and intimidate New York City debtors. As noted above, attorneys are subject to the federal Fair Debt Collection Practices Act, the General Business Law, and, to the extent that they apply to attorneys, the recent DFS regulations. Moreover, the Rules of Professional Conduct contain the ethical standards and practices to which attorneys licensed to practice in this state must adhere. Those rules prohibit a lawyer from bringing a frivolous action, from knowingly making a false statement of fact or law to a third person, and from engaging in activities with no substantial purpose other than to embarrass or harm a third person (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rules 3.1, 4.1, 4.4). Significantly, the rules also require attorneys to adequately supervise subordinate attorneys and nonlawyer employees, and hold attorneys responsible if those employees engage in a violation of the rules (*see id.* rules 5.1, 5.3). A lawyer is subject to the Rules of Profes-

---

4. The majority cites *Aponte v Raychuk* (160 AD2d 636 [1st Dept 1990]) as an example of a case involving a local law that regulates an attorney's nonlegal conduct (*see* majority op at 691). I note that *Aponte* is an Appellate Division case, and its reasoning has not been validated by this Court.

sional Conduct even when engaging in activities that could be considered "nonlegal services" if the nonlegal services are not distinct from the legal services being provided by the attorney (*see id.* rule 5.7; *see also Eric M. Berman, P.C.*, 895 F Supp 2d at 470 ["Not only do the courts possess the authority to regulate the nonlegal activities of attorneys once they are admitted to the bar, they may discipline attorneys for nonlegal activities conducted prior to their admission to the bar"], citing *Matter of Wong*, 275 AD2d 1, 5-6 [1st Dept 2000]).

I share the concern of the majority and the New York City Council that there exist in our state unscrupulous attorneys who bully debtors through harassing tactics, threatening rhetoric, and even outright lies. Those attorneys, although they undoubtedly constitute a small minority of lawyers attempting to collect debts on behalf of their clients, bring dishonor to the profession and should be prevented from preying on the State's vulnerable debtors. It is the *method* by which they may be thwarted, however, that concerns us on this appeal. If the State finds the existing regulations applying to lawyers in the area of debt collection to be inadequate, the State is free to impose whatever licensing or practice requirements it wishes upon the attorneys admitted to practice in this state (*see Roth*, 127 Misc 2d at 1000). A local government, however, may not.

Finally, I agree with defendants that we should not address plaintiff's alternative contention, which was not a question certified to this Court by the Second Circuit, that Local Law 15 is unconstitutionally vague. Inasmuch as plaintiff's vagueness challenge was asserted under the federal constitution, it would be inappropriate for this Court to address that contention under the procedural posture of this case (*see* Rules of Ct of Appeals [22 NYCRR] § 500.27 [a]).

Accordingly, I would answer the first certified question in the affirmative insofar as it asks whether Local Law 15 constitutes an unlawful encroachment on the State's authority to regulate attorneys, and I would not answer the second certified question as academic.

Judges READ, PIGOTT and ABDUS-SALAAM concur; Judge FAHEY dissents in an opinion in which Judge STEIN concurs; Judge RIVERA taking no part.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this

Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, first certified question answered in the negative and the second certified question, as reformulated, answered in accordance with the opinion herein.