OPINION OF THE COURT
Paul L. Meli, J.
Decision after Inquest
The plaintiff in this small claims breach of contract action is a law firm which seeks 50% of the tax savings brought about by reductions of the defendant’s residential property’s assessed value at the direction of the Nassau County Assessment Review Commission (ARC) for the 2012-2013, 2013-2014, 2014-2015 and 2015-2016 tax years. The claim is based on a retainer agreement, dated February 17, 2010, and authorizations signed by the defendant for each subsequent year.
At an inquest held on September 6, 2016, plaintiff claimed that it is not, as a law firm, a “Tax Assessment Reduction Service” within the meaning of section 21-19.0 et seq. (title D-9) *650 of the Nassau County Administrative Code, and, thus, not subject to the provisions thereof. By subsequent brief invited by the court, plaintiff initially contends that title D-9 is inapplicable because it only specifically references services that assist in the obtaining of a reduction in assessed valuation from the Nassau County Department of Assessment as opposed to applications made to ARC. The plaintiff alternately argues that, even if it falls under the definition of a “Tax Assessment Reduction Service” as defined by Nassau County Administrative Code § 21-19.1, the doctrines of conflict preemption and field preemption preclude the Nassau County Legislature from regulating its conduct and the details of its retainer agreement in the way that title D-9 contemplates.
For the reasons set forth below the court finds that plaintiff is a “Tax Assessment Reduction Service” within the meaning of title D-9, that it is subject to the provisions thereof, and, pursuant to such provisions, that the contract sued upon is unenforceable.
The Plaintiff is a “Tax Assessment Reduction Service” as Defined by Title D-9 of the Nassau County Administrative Code.
Title D-9 regulates the conduct of tax assessment reduction services in Nassau County. According to Nassau County Administrative Code § 21-19.1 (D):
“ ‘Tax Assessment Reduction Service’ shall mean any person who provides or offers to provide, for any compensation or consideration, whether direct or indirect, any service to assist the owner or the authorized agent of the owner of any dwelling located in Nassau County in obtaining a reduction in the assessed valuation of such premises from the Nassau County Department of Assessment.”[1]
The plaintiff initially argues that it is not subject to that definition since it sought a reduction in the assessed valuation of the defendant’s property from the Nassau County Assessment Review Commission rather than from the Nassau County Department of Assessment. In order to determine the validity *651 of this argument, the roles and the interplay between these two administrative bodies must be analyzed.
Article VT of the Nassau County Charter created the Department of Assessment, headed by the County Assessor, charged with the duty to, among other things, “assess all property situated in the County and liable to taxation for state, county, town, school and/or special district purposes” (Nassau County Charter § 602). The County Assessor, with the assistance of deputy assessors, is responsible for the preparation of the assessment roll (Nassau County Charter § 602). The Nassau County Charter further states that the County Assessor shall make any corrections in the assessment roll “as he or she may deem necessary” (Nassau County Charter § 606 [a]). These duties and obligations of the County Assessor are reiterated and described in fuller detail in chapter VI of the Nassau County Administrative Code.
The New York State Legislature subsequently mandated that each local government shall have a “board of assessment review” (RPTL 523). The state legislature later authorized Nassau County to establish, as an alternative to a board of assessment review, an assessment review commission, for the purpose of “reviewing and correcting all assessments of real property” (RPTL 523-b [2] [d]).
“Section 523-b allowed the ARC to function year round, as opposed to the previously existing Board of Assessment Review that met for three months out of the year, and also increased the number of commissioners in the hope that more tax grievances would be ‘resolved without court involvement and in a more timely manner’ ” (Matter of Sedacca v Mangano, 18 NY3d 609, 612 [2012], quoting Mem of Senator Dean G. Skelos in Support of L 1998, ch 593, 1998 NY Legis Ann at 373).
Once again, in arguing that it is not subject to the regulations of title D-9, the plaintiff contends that it does not provide the type of service contemplated by the definition of a “Tax Assessment Reduction Service,” since it sought a reduction from the ARC and not the Department of Assessment. It cannot be disputed that the ARC and the Department of Assessment are separate entities. As the plaintiff notes as a point of comparison in its brief, Suffolk County Administrative Code § 779-2 defines a tax assessment consulting service as follows:
*652 “Any person, individual, partnership, corporation, joint venture or other entity who or which provides or offers to provide, for any compensation or consideration, whether direct or indirect, any service to assist the complainant or the authorized agent of the complainant of any property located within the County in obtaining a reduction in the assessed valuation of such premises from the Board of Assessment Review and the town assessing unit” (emphasis supplied).
However, while Suffolk County’s Code might include a definition of such services that reflects a clearer expression of the legislative intent than its Nassau County counterpart,[2] given the roles and interplay between the Department of Assessment and the ARC, a more expansive definition is not necessary in order to deem the plaintiff’s activities to fall within the title D-9 definition.
Although the ARC is charged with “reviewing and correcting all assessments of real property,” it is not the entity that has the actual authority to correct the assessment roll. That power remains with the Department of Assessment. Indeed, pursuant to RPTL 525 (4),
“The members of the board of assessment review or a majority of them shall prepare and verify a statement showing the changes determined to be made by them in the assessments .... Such verified statement shall be delivered to the assessor on or before the date required by law for the final completion of the assessment roll.”
Then, pursuant to RPTL 526 (5),
“As soon as possible after receiving the verified statement prepared by the board of assessment review pursuant to subdivision four of section five hundred twenty-five of this title, the assessor shall make the changes in assessments on the assessment roll in accordance with such verified statement, *653 shall certify on such verified statement that he has recorded on the assessment roll the changes set forth in such verified statement and shall file such verified statement with the final assessment roll filed pursuant to section five hundred sixteen of this article.” (Emphasis supplied.)
While the statutory framework does not give the assessor any discretion other than to make the changes to the assessment roll as indicated on the ARC’S verified statement, the fact remains that it is the assessor, i.e., the Department of Assessment, not the ARC, that actually makes the changes to the assessment roll. Thus, while the ARC provides the avenue by which a homeowner may seek a reduction in his or her tax assessment, it is the Department of Assessment that actually executes the reduction. This interplay between these two entities is demonstrated by the ARC determination of final assessment letters for the 2012-2013, 2013-2014, 2014-2015 and 2015-2016 tax years, included in the plaintiff’s exhibits at inquest. In each of those letters, the ARC sets forth its determination and then “directs the Assessor to correct the records of assessment in accordance with this determination.”
Considering the above in the context of the interpretation of the definition of a “Tax Assessment Reduction Service,” any entity that assists a homeowner in “obtaining a reduction in the assessed valuation of . . . premises from the Nassau County Department of Assessment” does so in the very same way as the plaintiff did here (Nassau County Administrative Code § 21-19.1 [D]). That is to say, the ARC provides the procedural vehicle by which a reduction must be pursued, but it is the Department of Assessment that has the ultimate authority to make the changes (reductions) to the assessment roll as directed by the ARC. Therefore, the plaintiff, like all those who seek corrections to their assessments (on their own behalf or on behalf of another), underwent a review process conducted by the ARC. However, it is fair to say that the plaintiff sought to obtain such reduction “from the Nassau County Department of Assessment,” the only entity with the authority to actually effectuate the reduction by making changes to the assessment roll. Accordingly, the plaintiff is a “Tax Assessment Reduction Service” as defined by Nassau County Administrative Code § 21-19.1.
*654 The Plaintiffs Retainer Agreement is Subject to the Provisions of Title D-9 of the Nassau County Administrative Code.
The plaintiff alternatively argues that, even if it falls under the definition of a “Tax Assessment Reduction Service” as defined by Nassau County Administrative Code § 21-19.1, the doctrines of conflict preemption and field preemption preclude the Nassau County Legislature from regulating its conduct and the details of its retainer agreement in the way that title D-9 contemplates. The plaintiff contends that its conduct, as a law firm, is regulated by the Judiciary Law and the New York Rules of Professional Conduct. The plaintiff, in its brief, goes through a relatively detailed discussion of conflict and field preemption, and then itemizes each restriction of title D-9 and explains how each restriction is in direct conflict with a specific provision of the New York Rules for Professional Conduct.
However, “ [although the courts may have preempted the field of regulating attorney misconduct, that authority does not extend to all nonlegal aspects of attorney behavior, which can be governed by both civil and criminal law, including regulatory proscriptions” (Eric M. Berman, P.C. v City of New York, 25 NY3d 684, 692 [2015]). In Eric M. Berman, P.C., the New York State Court of Appeals was confronted with the issue of whether a New York City local law which regulated certain, practices for debt collection agencies was preempted by the state’s statutory authority to regulate the conduct of attorneys. In that case, the local law in question provided a limited exemption for attorneys or law firms that were “collecting a debt in such capacity on behalf of and in the name of a client solely through activities that may only be performed by a licensed attorney” (Administrative Code of City of NY § 20-489 [a] [5]). However, such exemption did not cover “any attorney-at-law or law firm or part thereof who regularly engages in activities traditionally performed by debt collectors, including, but not limited to, contacting a debtor through the mail or via telephone with the purpose of collecting a debt or other activities as determined by rule of the commissioner” (id.).
The Court of Appeals reasoned that there was
“a significant and meaningful distinction between such conduct [constituting the practice of law, i.e., making phone calls or sending letters on behalf of a client in an attempt to recover specific amounts due to that client] and conduct that is typical of a *655 debt collecting] agency—making high volume collection calls at off-hours and sending boilerplate ‘dunning’ letters demanding payment without details of the source of the debt or the actual amount due” (Eric M. Berman, P.C. at 691).
The Court of Appeals further determined that “where attorneys or law firms seek to recover debt on behalf of passive debt buyers, without exercising any professional judgment as to the validity of the debt or the amount owed, it falls outside the practice of law” (id. at 692). Accordingly, the Court of Appeals found that the local law at issue was not preempted by the state’s legislative authority in regulating attorney conduct (id.).
In the instant matter, before the plaintiff’s contentions regarding preemption can be reached, it must first be determined whether the plaintiff’s activities, i.e., obtaining a reduction in its client’s tax assessment, fall outside the practice of law. The plaintiff’s only argument in its brief that its services constitute the practice of law is confined to a conclusory statement that “the underlying services provided by plaintiff fall squarely within the practice of law.” The plaintiff’s retainer agreement, admitted at inquest as exhibit 1, describes the plaintiff’s services as follows:
“The Client hereby retains the Firm to serve and file administrative grievance applications (‘protests’) and judicial proceedings against the real estate tax assessments placed on the property or properties by all taxing jurisdictions affecting the parcels described on the schedule below (or for properties which the Client hereafter authorizes the Firm to appeal) and to initiate and prosecute claims for any resulting tax refund for the tax year 2010/11 and following tax years until all of the proceedings are completed or this authorization is revoked. Any member of the Firm is authorized to execute, verify and file on behalf of the Client such administrative protests and appeals for judicial review as may be appropriate.”
The proof adduced at inquest as to the specific work performed for the defendant is that the plaintiff filed appeals with the ARC on behalf of the defendant for a number of tax years, and that the plaintiff procured tax assessment reductions for the defendant through stipulations with the ARC. Such services, however, do not fall within the practice of law.
*656 The provision of services to assist taxpayers in reducing their assessments has become a business model commonly undertaken by numerous nonlegal entities or nonlawyers. Not only that, ARC’s own website encourages individuals to seek reductions pro se. (Assessment Review Commission, https://www.nassaucountyny.gov/1510/Assessment-Review-Commission.) It provides instruction on how to do so there (including a video tutorial), and it also publishes its own “how-to” brochure for individuals (“It’s Free—It’s Easy—It’s Fast”) (How to Appeal Your Assessment, https:// www.nassaucountyny.gov/DocumentCenter/View/13230). According to the chairwoman of the ARC, Robin S. Laveman, local legislators routinely hold informational and training sessions touting the “do it yourself” nature of seeking assessment review for their constituents (Daniel Wheaton & Matt Clark, Nassau Tax Grievance Firms that Pushed for Changes, Donated to Politicians, Increased Fees by Millions, Newsday, Aug. 15, 2015). Ms. Laveman also has touted her efforts to make assessment review easy for non-represented taxpayers— “That’s one of the things we’ve worked very hard to do—is to make it very user friendly for pro se litigants to file. . . . Our staff is very hands-on with pro se litigants to help them” (id.).[3]
The reality is that firms like the plaintiff (some of which are not law firms and many of whom employ non-attorneys) file appeals for clients with the ARC, a task which requires no legal acumen, and then, with the leverage of representing thousands of clients, settle the appeals en masse. According to the Newsday article, the seven largest tax assessment review firms (based upon number of settlements), of which the plaintiff is one, handled 72% of the nearly 137,000 residential property tax challenges filed for the 2015 tax year. Those firms settled roughly 88% of those cases with the ARC.
If the work included in this particular case had involved judicial review outside of the administrative review by the ARC, a more compelling argument might be made that such work comprised the practice of law. However, the process of filing claims and settling them in the manner the plaintiff does cannot be considered to be the practice of law. As such, the *657 doctrines of conflict and field preemption have no application here. Accordingly, the plaintiff’s retainer agreement is subject to the regulations of title D-9.
The Contract Sued upon is Unenforceable Pursuant to Title D-9 of the Nassau County Administrative Code.
Section 21-19.2 of the Nassau County Administrative Code provides that
“[n]o tax assessment reduction service shall . . .
“E. Enter into a contract or agreement with an owner unless such contract or agreement shall contain, conspicuously and clearly written: . . .
“(2) A provision permitting the owner, at any time within three days after having entered into such contract or agreement, to completely cancel such contract or agreement and receive a full and prompt refund of any fee or deposit already paid by such owner to such tax assessment reduction service. Any provision in a contract or agreement that purports or attempts to nullify, vacate or in any manner restrict the night [sic] of cancellation described in this paragraph shall be completely void and unenforceable; and
“(3) A provision requiring the prompt refund by the service to the owner of all fees paid by the owner to the service, other than disbursements already paid by such service on behalf of such owner as evidenced by a receipt or other indicia of payment issued to such service by a court or government agency if the efforts of the service do not achieve a tax assessment reduction for the owner; and
“(4) A notification that an owner is not required to use a tax assessment reduction service in order to file for and/or receive a tax assessment reduction; and . . .
“(6) A provision stating that the service is required by law to make reasonable efforts to fully communicate to the owner the terms of any offer of settlement made by Nassau County to the service in the course of a tax assessment review proceeding, other than a hearing or trial, with respect to the affected parcel of real estate; and
“(7) A provision stating: ‘Only: 1. a person named in the records of the Nassau County Clerk as a *658 homeowner; or 2. that person’s authorized agent; or 3. a person who has contracted to buy a home; or 4. the estate of a deceased homeowner, is eligible under the law to receive a tax assessment reduction and a property tax refund. If you are not in any of these four categories, you will not be able to receive a property tax refund and you should not sign this agreement.’ ”
Pursuant to section 21-19.4, “[a]ny contract or agreement entered into in violation of subdivision E of Section 21-19.2 of this title shall be unenforceable by a tax assessment reduction service as against an owner.”
Since the agreement here sued upon does not contain the provisions required by section 21-19.2 (E) (2), (3), (4), (6), or (7), it is unenforceable. The plaintiff’s complaint is, thus, dismissed.

. “Person” is defined to mean “any natural person, individual, firm, partnership, association, entity or corporation.” (Nassau County Administrative Code § 21-19.1 [A].)

. It should be noted that title D-9 does include a section which states its legislative intent. Section 21-19.0 of the Nassau County Administrative Code provides, in pertinent part: “The Board of Supervisors hereby finds that homeowners within the County of Nassau have been victimized in a significant amount by services which offer, for a fee or other compensation, to assist homeowners in obtaining a reduction in the assessed valuation of their residences.”

. Indeed as is noted below, title D-9 itself requires that every agreement between a homeowner and a tax assessment reduction service notify the owner that he or she is not required to use such a service in order to file for and/or receive a tax assessment reduction (Nassau County Administrative Code § 21-19.2 [E] [4]).