OPINION OF THE COURT
Louis B. York, J.
THE PARTIES
Rudolph Giuliani, the Mayor of the City of New York, and Diane McGrath-McKechnie, the Commissioner of the New York City Taxi and Limousine Commission, seek summary judgment in their challenge against the constitutionality of portions of the local laws regarding the licensing of the commuter vans that operate in the City of New York. The City Council cross-moves for summary judgment dismissing the complaint and a declaration of the lawfulness and constitutionality of the local laws in dispute. It also contends that this action should have been brought as a CPLR article 78 proceeding, and *832 therefore must be dismissed as time barred. Hector B. Ricketts, as operator of á van service, has brought a separate independent action against the City of New York similarly challenging the two local laws. Ricketts is also moving for summary judgment in his lawsuit and seeks to intervene in this one. In the Ricketts action, the parties move to invalidate segments of these local laws on identical grounds raised in this action together with other issues challenging their constitutionality.
During argument of the motions, I informed the parties that I would decide the two motions at the same time. Nevertheless, Ricketts continues to seek intervention in this matter.
THE STATUTES
The local laws which are the subject of this lawsuit are Local Laws, 1993, No. 115 of the City of New York and Local Laws, 1997, No. 83 of the City of New York. Local Law No. 115 places the responsibility on the Taxi and Limousine Commission for determining the licensing of the commuter vans and in what parts of the City they may operate. The City Council, however, must approve that choice before the approved van operation can go into effect. The Mayor challenges the provision of Local Law No. 115 (call up provision) and demands that it be struck down. Local Law No. 83 places a one-year moratorium on the approval of any license applications for one year. Shortly after the motions were brought, the one-year moratorium of Local Law No. 83 expired. This effectively moots the challenge to this aspect of the law and eliminates the need for further judicial action.
BRIEF HISTORY OF COMMUTER VANS IN NEW YORK CITY
Commuter vans are characterized as vehicles that carry 20 passengers or less. In 1980 public transportation workers engaged in a series of strikes which disrupted the transportation needs of a large number of those persons who relied on mass transportation. During that time, substitutes for the loss of those transportation services arose in the form of jitneys which came to be known as commuter vans. When the strike ended, these vans continued to supply services to neighborhoods in Queens and Brooklyn where adequate and cheap transportation was difficult to access or was nonexistent.[1]
*833 DEVELOPMENT OF THE DISPUTE
Originally, these vans were regulated by the New York State Department of Transportation. In 1992 Transportation Law § 80 (5) (enabling act) allowed the City of New York to assume local control over commuter vans provided local legislation was enacted designating a City administrative agency as the regulatory authority. The existing transportation scheme was to continue until the passage of such a local law. In 1993 the City Council enacted Local Law No. 115 (Administrative Code of City of NY § 19-504.2 [f] [2], [3]). The legislation provided that the Commissioner of the Taxi and Limousine Commission shall approve or disapprove applications to operate a commuter van service. The City Counsel was given the authority to approve or disapprove the granting of such authorization. This last provision is the hub of contention between the Mayor and the Council.
THE PARTIES’ CONTENTIONS
The present action was precipitated by the rejection of three commuter van applications by the City Council which were approved by the Mayor. The court notes that the veto by the Mayor of one of the City Council rejections did not result in a vote to override the veto. The plaintiffs claim that the granting to the City Council such veto power violates the New York City Charter, the State Home Rule Law, the enabling statute and the principle of separation of powers. The City Council argues that the resolution is entirely within its legislative powers to set standards and to legislate generally for the entire City or to sections thereof. It also contends that the attack on the resolution should have been brought under CPLR article 78. The Statute of Limitations for such proceedings is four months and, therefore, the action is barred under the article 78 Statute of Limitations.
DECISION
The court finds the City Council’s position untenable and for the reasons that follow grants the Mayor’s and Commissioner’s motion for summary judgment declaring Administrative Code § 19-504.2 (f) (2) and (3) null and void and without force and effect. The court also denies the motion for intervention as of right or on permissive grounds. The reasons therefor are discussed infra.
*834 OPINION
This action is not barred by the 120-day Statute of Limitations for article 78 proceedings. An article 78 proceeding is not the remedy for adjudicating the validity of legislative enactments. (Unanue v Town of Gardiner, 105 AD2d 1025, 1026 [3d Dept 1984]; Matter of Top Tile Bldg. Supply Corp. v New York State Tax Commn., 94 AD2d 885 [3d Dept 1983], appeal dismissed 60 NY2d 653, appeal dismissed 465 US 1095.)
The enabling act established a procedure by which an agency designated by the Mayor was to enforce the local law and approve or disapprove applications to operate commuter vans under the standards established by the local legislative body. This procedure was followed by Local Law No. 115, but before final authorization could be given it superimposed approval by the City Council. (Administrative Code § 19-504.2 [f] [2], [3].) In Consolidated Edison Co. v Town of Red Hook (60 NY2d 99 [1983]), Public Service Law article VIII established a State Board to certify all new major steam electric generating facilities. The Town Board of Red Hook enacted a requirement that before a study was commenced as to the feasibility of establishing such a facility, a detailed application must be submitted to it for approval. Judge Kaye, writing for the Court, held that the local law was invalid; first, it imposed an additional layer of regulation and second, it was inconsistent with a general State law. This decision illuminates the principle that the local Legislature cannot “ ‘impose “prerequisite ‘additional restrictions’ ” on rights [conferred] under State law’ ”. (See, New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987], affd 487 US 1.) By the same reasoning, the clear message of the State Legislature in enacting the enabling act is that the City agency in the Executive Department of the government is the entity that makes the final determination on granting or rejecting a commuter van application.
The disputed City Council provision also violates section 28 (d) of the City Charter which states that “[a] 11 local laws shall be general, applying either throughout the whole city or throughout specified portions thereof.” By this enactment, the City Council exercises the local executive function. The Mayor’s powers do not include legislative functions, just as the City Council cannot usurp the general powers conferred on the Mayor by the City Charter. (See, Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344 [1985].) The City Council’s role is to create generalized standards while the Mayor’s or his appointee’s role, inter alia, is to *835 enforce those standards in making individualized determinations while carrying out standards and policies established in City ordinances. The Council’s contention that in enacting a resolution approving or disapproving an application approved by the Taxi and Limousine Commission it is establishing generalized policy is false. In reality, it is performing a mayoral prerogative in making individualized determinations, an executive function, as to whether it will approve or disapprove a specific request by an applicant for a commuter van license. This it cannot do. (Supra.)
Local Law No. 115 also runs afoul of both Municipal Home Rule Law § 23 (2) (f) and § 38 (5) and section 11 of the City Charter, which subject any local law that curtails or transfers any powers of an elected official, such as the Mayor, to public referendum. In this case the Council has invalidly curtailed the power of the Mayor’s agency appointee to determine who shall receive commuter van franchises by arrogating to itself the right to approve or disapprove that agency’s decision. These rules are a manifestation of the doctrine of separation of powers among the three branches of government which holds that no one branch of government can arrogate to itself powers residing entirely in another branch. (Under 21, Catholic Home Bur. for Dependent Children v City of New York, supra.) Nor can it enact legislation inconsistent with the Municipal Home Rule Law. (New York State Club Assn. v City of New York, supra; Mayor of City of N. Y. v Council of City of N. Y., Sup Ct, NY County 1995, index No. 402354/95, affd 235 AD2d 230 [1st Dept 1997].)
In its final comment as to the validity of that portion of Local Law No. 115, which assumes veto power over the Taxi and Limousine Commission’s decision to grant requests for commuter van franchises, the court notes that section 11 (2) (b) of the Municipal Home Rule Law invalidates any local law inconsistent with that municipality’s charter — clearly another reason for striking the provisions in question.
The Ricketts interveners’ complaint seeks intervention as of right under CPLR 1012 because their interests may not be adequately represented by the parties or they may be bound by the judgment. As a practical matter, it could be argued very persuasively that this issue is moot, since the issues raised by the intervenor complaint, i.e., the validity of both the Council’s veto power contained in Local Law No. 115 and the moratorium of Local Law No. 83 have been decided favorably to the mayoral plaintiffs, and the proposed intervenor without consideration of *836 the arguments raised in the proposed intervener’s action in Ricketts v City of New York (181 Misc 2d 838). Moreover, it appeared early on to the court that both sides in this action were taking these challenges to their authority very seriously. The interests expressed in defeating the call up provision and the moratorium by the mayoral plaintiffs and the Ricketts parties coincide. Moreover, there is no way that the Ricketts group could be bound by any decision adverse to them. In their other action, they can use the decision here as a sword against the Ricketts plaintiffs[2] and as a shield against those defendants who might want to assert any decision in this action against Ricketts plaintiffs. In other words, the litigants in this action will be collaterally estopped from defending against those issues decided in the Ricketts action because they have had the same issue in this action decided against them, i.e., they cannot raise any issue decided in this action against the Ricketts plaintiffs in the Ricketts action. (B. R. Dewitt, Inc. v Hall, 19 NY2d 141 [1967]; see also, Siegel, NY Prac § 460 [2d ed].)
I also exercise my discretion in denying permissive intervention. The Ricketts plaintiffs will suffer no prejudice by this refusal. On the other hand, permissive intervention will unnecessarily prolong this dispute. The issues have already been decided. If any issue were decided adversely against the Ricketts plaintiffs in this action by an appellate court it cannot be binding against them unless an appeal is also taken against them in their own action. In point of fact, the issues have been decided in their favor. Therefore, their interest has been adequately represented. In the meantime, this action between the parties in this action is resolved and instead of two actions for the parties to contend with there is only one. This would seem to be a benefit to the court and to the parties. Had there not been another action containing the same issues or had the Ricketts litigants moved for consolidation, their motion would have been on much firmer ground. (See, East Side Car Wash v K.R.K. Capitol, 102 AD2d 157 [1st Dept 1984] [intervention denied where intervenor brought another action raising additional issues].) It is therefore ordered and adjudged that the plaintiffs’ motion for summary judgment to declare and enjoin Local Law No. 83 of 1997 is denied as moot; and it is further ordered, adjudged and decreed that those provisions of Local Law No. 115 of 1993 requiring review and approval of the Taxi *837 and Limousine Commission grants of operating authority to qualified applicants for commuter van franchises by the defendant the Council of the City of New York are null and void; and it is further ordered that the defendant City Council is enjoined from enforcing those provisions of Local Law No. 115 of 1993 which require the City Council’s approval of the Taxi and Limousine Commission decision regarding applications for operating authority and any other application to the Taxi and Limousine Commission pertaining to commuter vans; and it is further ordered and adjudged that the defendants’ cross motion for summary judgment dismissing this action and a declaratory judgment is denied.

. This history is derived from the briefs of both parties and the proposed intervenors, none of them being inconsistent with each other.

. Except as against the State which is not involved in this action, but assumed a very passive role in the Ricketts litigation anyway, and did not produce any legal arguments to the court in that action.