OPINION OF THE COURT
Louis B. York, J.
This is an action seeking to nullify local legislation giving the City of New York authority for the granting of franchises for the operation of commuter van services in the City of New York. For a brief history of the development of commuter van services in New York City and the legislation granting the City of New York authority over the operation see the decision in Giuliani v Council of City of N. Y. (181 Misc 2d 830) decided this day.
Plaintiffs are operators of existing commuter services who have been denied their requests to expand operations or are seeking to obtain authorizations for a new commuter van service and the organization representing the interests of commuter van operators.
In this action, which raises several Federal and State constitutional claims, the plaintiffs seek summary judgment on the third and fourth causes of action. The City Council cross-moves for partial summary judgment dismissing the first, second, third and fourth causes of action. The other City defendants also cross-move for partial summary judgment against the first through fourth causes of action.
The first cause of action alleges a denial of due process against all defendants in that the State and local legislation prohibits community vans from operating on bus routes and prohibits the picking up of customers except by prearrangement. The second cause of action alleges a violation of constitutional rights by allowing the applications for commuter van services to be denied without an explanation or a record for review or merely not responding to the application within 180 days, all of which, once again allege plaintiffs, amount to a deprivation of the plaintiffs’ right to earn a living. The third cause of action directed against the City defendants seeks to nullify Local Laws, 1993, No. 115 of the City of New York. It claims that this legislation, which does not provide for the per *841 manent authorizations accorded by the State to existing commuter van services (the grandfather authorizations), is therefore invalid as inconsistent with State law and deprives the owners of these operating services of their constitutional right to liberty by depriving them of the right to earn a living. In addition, they argue that the State enabling legislation transferring regulatory authority from a mayoral designated agency is violated by Local Law No. 115 which gives the final authority of approval to the City Council, a local legislative body rather than a City agency. The plaintiffs also claim that the local law does not guarantee that the approval process will be completed within 180 days as is required by the enabling act (Transportation Law § 80 [5] [a] [1]). The fourth cause of action against the City defendants is directed against Local Laws, 1997, No. 83 of the City of New York imposing a moratorium on the granting of new applications. That law has expired and has not been renewed. Therefore, this branch of the motion is denied as moot.
The part of the third cause of action directed against the provision requiring that any decision by the Taxi and Limousine Commission involving approval of an application to establish or extend a franchise is subject to approval by the City Council has been nullified by the decision in Giuliani v Council of City of N. Y. (supra). The City defendants in this action had a full and fair opportunity to litigate this issue. They are estopped from relitigating it in this action. (B. R. DeWitt, Inc. v Hall, 19 NY2d 141 [1967].) The remaining issues boil down to (1) whether the grandfather authorization in the local law should be struck down because it is inconsistent with the permanent status that was granted under the State law and deprives the plaintiffs of their constitutional right to earn a living; and (2) whether the local law, by allowing a failure to make a decision of a request by a franchise within 180 days is a denial of an application, is inconsistent with the State law requirement of a decision within 180 days; and (3) whether the entire local law must fall because its invalid provisions cannot be severed from the rest of the statute.*
A local law is clothed with the presumption of constitutionality. An attack on such a law carries a heavy burden. (41 Kew Gardens Rd. Assocs. v Tyburski, 70 NY2d 325 [1987].) To overcome this heavy burden, movant must establish beyond a *842 reasonable doubt that there is no rational relationship between the legislation and the public interest, even in the absence of relevant legislative findings. (Town of N. Hempstead v Exxon Corp., 53 NY2d 747 [1981].)
“The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality. The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known to be assumed, justifies the disputed measure, this court’s power of inquiry ends.” (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11-12 [1976].) This court cannot make its determination as to the validity of the routes that vans are allowed to operate in or whether the vans can pick customers up at random or must pick up and deposit them at prearranged destinations, even though the court may think it unwise or believe there is a better way to achieve the City’s goals. The City of New York has been granted as part of its police powers the authority to regulate the public streets. (Vehicle and Traffic Law § 1640 [a] [5]; Bakery Salvage Corp. v City of Lackawanna, 24 NY2d 643 [1969].) In its newly granted power allowing the City to regulate van services under Local Law No. 115, the City has exercised its police power to regulate traffic in the public streets to prohibit commuter vans from traveling on certain routes and to prohibit them from picking up and depositing passengers except at their homes and at non-bus-route stops. This court is not in a position to determine either the wisdom or the alternatives. While I may believe there is a better way to accomplish its ends I cannot determine beyond a reasonable doubt that there is no rational relationship between this law and the City’s police power to regulate traffic in the general public interest.
Nor can I say that the City’s failure to continue the permanent status that the franchises had under State control violates State law. The grandfather clause in the enabling statute merely requires those commuter van franchises given permanent licenses by the State to continue to operate through the transition period. It clearly evinces the State’s intention for *843 the City to chart its own licensing policy undisturbed by the prior licensing policy of the State. “Notwithstanding any other provision of law * * * such local law or ordinance shall * * * (iii) make provisions for the continuation of operating authority for van services and other such common carriers of passengers previously approved by the department which are in compliance with such operating authority through the conversion of such operating authority issued by the city agency designated by the local law or ordinance adopted pursuant to this subdivision” (Transportation Law § 80 [5] [a] [1] [emphasis added]). It is obvious that this legislation permits the City of New York to limit the previous permanent licenses to operate that were granted by the State. This was the understanding of the State legislators most directly involved in the enactment of the legislation. “The criteria would not have to conform to the criteria in Transportation law section 153 [temporary licenses] and 1514 [permanent licenses] currently applicable to the grant by SDOT [State Department of Transportation]” (Mem of Senator Goodman and Assemblyman Lafayette; accord, Mem of NY City Legislature).
The plaintiffs also allege that the City’s removal of permanent status to the grandfather franchises constitutes an unconstitutional taking of property and a denial of their liberty right to earn a living. The fault with this argument is that the plaintiffs’ licenses to operate their franchises do not constitute a property right protected by the State and Federal Constitutions; nor do their businesses fall under the Liberty Clauses of those Constitutions. (People v Cook, 34 NY2d 100 [1974].) “The right to do business has never been considered a fundamental right. On the contrary, in a number of cases, the Supreme Court has held that the government may regulate or even prohibit an occupation or business without running afoul of the Due Process Clause, provided that the law bears a rational relation to a legitimate purpose” (Telegraph Sav. & Loan Assn. v Federal Sav. & Loan Ins. Corp., 564 F Supp 880, 891 [ND Ill 1982]). The power to condition or restrict private businesses or to prohibit their operation has specifically been recognized by our courts, especially with respect to public utilities. (Matter of CNG Transmission Corp. v New York State Pub. Serv. Commn., 185 AD2d 671 [1992].) It cannot seriously be argued that mass transportation such as buses and vans are not public utilities which have been described as “[a] business or service which is engaged in regularly supplying the public with some commodity * * * such as electricity, gas, water, transportation, or *844 telephone or telegraph service.” (Black’s Law Dictionary 1232 [6th ed].) This court recognizes the rational relationship between the grant of local control over these franchises and the City’s exercise of its police power to regulate traffic on the public streets and the intention of the enabling statute Local Law No. 115 is to give the City local control over these franchises so as to locally develop a program for the granting of licenses and the regulation of these programs. The City’s approach to the grandfathered franchises clearly does this. Whether it does it in the best possible way or whether this Judge would do it another way is not a basis for consideration. That choice is the City’s and not the court’s.
The plaintiffs claim that because of the invalidity of the provisions requiring City Council approval of the Taxi and Limousine Commission grants of franchises and the lack of permanency given to the grandfathered franchises, the entire local law should be struck down because of the interrelationship of these provisions with the rest of the ordinance. They claim that the local law was meant to exist with all of these provisions or not to exist at all and that the City Council’s intention was not to have the statute exist without the permanency to the grandfathered franchises and final City Council clauses. The grandfathered franchises’ permanency is no longer an issue since its constitutionality has been upheld in this decision. The correct analysis is to take a practical approach in determining whether the main focus of the statute is still viable in the absence of the call-back provision and whether the City Council intended the statute to still be enforced without it being able to call back a determination of the Taxi and Limousine Commission. (Association of Surrogates & Supreme Ct. Reporters v State of New York, 79 NY2d 39 [1992].) “The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch, instead of at the roots.” (People ex rel. Alpha Portland Cement Co. v Knapp, 230 NY 48, 60 [1920, Cardozo, J.].) Where the severed portions of a statute are incidental to the main purpose of the statute, that portion may be removed with the rest of the statute remaining intact. (Supra.) Some statutes cannot be enforced because it is clear that there could not be any intention to enforce them if a part were excised. (Mayor of City of *845 N. Y. v Council of City of N. Y., 235 AD2d 230 [1st Dept 1997] [where legislation concerning lag payments of statutes could not be enforced against 90% of employees because of collective bargaining agreement, Court held that the Legislature did not intend to enforce it against the remaining 10% of nonunion employees]; Association of Surrogates & Supreme Ct. Reporters v State of New York, supra.) Such is not the case here. The City Council has vigorously opposed invalidation of the statute even if the challenged portions of Local Law No. 115 were declared unconstitutional. The court also notes that any analysis of the law indicates that the City Council’s reservation of the final word on franchise approvals is incidental to the main purpose of Local Law No. 115, which is to turn control of the approval and regulation of commuter van franchises over to local City authorities. This purpose is achieved with the removal of the City Council’s power of approval of commuter van franchises.
Finally, the court is troubled by the section in Local Law No. 115 that provides that the passage of 180 days without a hearing results in a denial of the license and that no provision of that law requires that reasons be given for the denial. It is fundamental to procedural due process that a licensee be given notice of adverse action by the licensing authority, and an opportunity to be heard. It must also be given reasons for an adverse decision. (Matter of Kokoni, 110 AD2d 1023 [3d Dept 1985]; WNEK Vending & Amusements Co. v City of Buffalo, 107 Misc 2d 353 [Sup Ct, Erie County 1980].) While the hearing and notice may not necessarily take place before the adverse action, it must be offered very shortly thereafter. (Dixon v Lowe, 431 US 105 [1977].) What process is due necessarily depends on the nature of the right under consideration, the exigency of the situation and alternate means available to the claimant of satisfying its needs. (Matthews v Eldridge, 424 US 319 [1976]; Drolet v New York State Racing & Wagering Bd., 115 Misc 2d 7 [1982]; cf, Goldberg v Kelly, 397 US 254 [1970].) The termination of a license should require greater protection than a first time application for a license or a request for a modification of a license in determining what process is due.
The model of a full evidentiary hearing is not required in every circumstance. So long as the plaintiffs are given a full and fair opportunity to present their case, confrontation and cross-examination may not be necessary. A full and fair opportunity to present a case is usually all that is necessary. (Taddonio v Heckler, 609 F Supp 689, 694 [ED Pa 1985].) These *846 requirements are not only necessary for administrative law purposes. The State has set up a procedure under CPLR article 78 for a limited challenge to administrative determinations. Such a proceeding cannot be carried on without the procedural safeguards that have been set forth.
To sum up, Local Law No. 115 is valid and enforceable but only in accordance with this decision, and Local Law No. 83 is void as moot. This matter is remanded to the City defendants in order that the Taxi and Limousine Commission may adjudicate the plaintiffs’ individual claims consistent with the procedural standards set forth supra.

 Although this issue was not raised in the plaintiffs’ notice of motion, nor in their complaint, it was argued extensively in all of the parties’ memoranda. Therefore, the court will address the issue.