[33 NYS3d 202]

New York State Association for Affordable Housing et al., Appellants, v Council of the City of New York, Respondent, and City of New York et al., Appellants.

First Department, June 2, 2016

### APPEARANCES OF COUNSEL

*Law Office of Kenneth G. Roberts, P.C.*, Larchmont (*Kenneth G. Roberts* of counsel), for New York State Association for Affordable Housing and others, appellants.

*Zachary W. Carter, Corporation Counsel*, New York City (*Susan P. Greenberg* and *Richard Dearing* of counsel), for City of New York and another, appellants.

*Emery Celli Brinckerhoff & Abady LLP*, New York City (*Andrew G. Celli, Jr., Elizabeth S. Saylor* and *Debra L. Greenberger* of counsel), for respondent.

*Archer, Byington, Glennon & Levine LLP*, Melville (*James W. Versocki* and *Matthew Hromadka* of counsel), for Laborers Eastern Region Organizing Fund, amicus curiae.

### OPINION OF THE COURT

Andrias, J.

Local Law No. 44 (2012) of City of New York, effective January 1, 2013, amended title 26 of the Administrative Code of the City of New York by adding a new chapter 10, which relates to the disclosure on a public website of information regarding "affordable housing" projects that defendant New York City Department of Housing Preservation and Development (HPD) initiates, funds or otherwise participates in. Although one may reasonably argue, as does the dissent, that the disclosure requirements imposed by the law are costly, difficult or cumbersome, or that the law will not remedy corruption in the developer selection process or further the flexible and economi-

cal implementation of publicly funded housing, the wisdom, necessity or efficacy of the law is not the province of the courts (*see Matter of New York County Lawyers' Assn. v Bloomberg*, 95 AD3d 92, 108 [1st Dept 2012], *affd* 19 NY3d 712 [2012]). Rather, the only issue before us is whether Local Law No. 44 is unconstitutional because it is preempted by state statutes or violates the Due Process and Equal Protection Clauses of the New York State Constitution. Applying well established precedent to the facts, we find that Local Law No. 44 does not unlawfully interfere with or frustrate HPD's authority under the City Charter or impermissibly conflict with the state legislature's delegation of authority and discretion over affordable housing programs to HPD, and that it is not otherwise unconstitutional.

The legislative history reveals that the City Council, in passing Local Law No. 44 over former Mayor Bloomberg's veto, was concerned that there was "no single, comprehensive, and easily located resource that the public can use to obtain all of the relevant information about [affordable housing] projects," and that "there [had] been a number of events indicating that HPD's developer selection process may not be functioning as intended" (Committee on Housing and Buildings, Report of the Infrastructure Division, Sept. 24, 2012 at 3). These events included the receipt by the Committee of "documentation of allegations calling into question the construction quality of the housing built by some HPD-selected developers" (*id.*). They also included "investigations by the United States Department of Labor (DOL) as well as allegations in the press indicat[ing] possible underpayment and other mistreatment of construction laborers by some HPD-selected developers and their contractors," and the indictment of several HPD-selected developers and HPD staff "on charges related to manipulation of HPD's developer selection process" (*id.*).

To address these concerns, section 26-902 (a) of the new chapter 10 requires HPD to disclose on its website "the list identifier and the criteria used by the department to determine whether an entity [developer, contractor or subcontractor] qualifies for [each prequalified] list." Section 26-902 (b) requires HPD to disclose on its website "the list identifier, the name and address of each entity on [a disqualified] list and the name and title of each principal officer and principal owner of such entity and the criteria used by the department to determine whether an entity is disqualified."

Section 26-903 (a) requires HPD to disclose on its website certain information concerning each affordable housing project carried out using discretionary financial assistance. This includes the project identifier; the applicable HPD program; the project's size, location, and number of proposed dwellings (separated by bedroom number, income limits and rents); the amount and type of financial assistance given by the City; the anticipated completion dates; the name, address, and principal owners of the developers, contractors, and subcontractors; the manner in which the developers were selected, including if prequalified or disqualified lists were used; whether work on the project will be subject to state or federal prevailing wage law; descriptions of the final outcomes of complaints related to prevailing wage violations; and the total number of "construction conditions" (violations, quality complaints, and quality determinations by HPD) related to the project along with a description of any remedial actions taken, ordered, or requested by HPD. Section 26-903 (b) provides that for projects where the developer was selected by HPD after January 1, 2013, HPD must update project information at least once every six months until completion and must update the information on construction conditions at least once every six months until five years after completion.

Section 26-904 requires quarterly wage reports from contractors and subcontractors with annual gross revenues of at least $2.5 million. The reports must include each laborer's job title along with the information specified under Labor Law § 195 (3). Section 26-905 provides that, "[i]n addition to any other penalty provided by law," any contractor or subcontractor which (a) "fails to provide wage reporting information in accordance with section 26-904," or (b) has "a history of construction conditions, as determined by [HPD]," "shall be ineligible to be included on a prequalified list of contractors and subcontractors."

Plaintiffs and defendants City of New York and HPD contend that Local Law No. 44 is preempted by state statutes, including Labor Law §§ 650-665, Municipal Home Rule Law § 11 (1) (f), and various provisions of the General Municipal Law and the Private Housing Finance Law. Plaintiffs also contend that the law violates the Due Process and Equal Protection Clauses of the Constitution.

"A local law will be preempted either where there is a direct conflict with a state statute (conflict preemption) or where the

legislature has indicated its intent to occupy the particular field (field preemption)" (*Eric M. Berman, P.C. v City of New York*, 25 NY3d 684, 690 [2015]; *see DJL Rest. Corp. v City of New York*, 96 NY2d 91, 95 [2001]).

Under the doctrine of field preemption, a municipality is prohibited from exercising a police power "when the Legislature has restricted such an exercise by preempting the area of regulation" (*New York State Club Assn. v City of New York*, 69 NY2d 211, 217 [1987], *affd* 487 US 1 [1988]). In that event, local governments are precluded from enacting laws on the same subject matter whether or not they actually conflict with state law (*see Matter of Chwick v Mulvey*, 81 AD3d 161, 172 [2d Dept 2010]), unless there is "clear and explicit authority to the contrary" (*DJL Rest. Corp.*, 96 NY2d at 95 [internal quotation marks omitted]).

Field preemption may be based on an express statement in the statute that it preempts all local laws on the same subject matter or "implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area" (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 377 [1989]). To find implied preemption there must be clear evidence that the legislature has "evinced its desire to do so and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area" (*New York State Club Assn.*, 69 NY2d at 217).

The Private Housing Finance Law and the General Municipal Law delegate powers to the City, through HPD, to make "loans" or "grants" to develop both private and public properties for affordable housing (*see generally* Private Housing Finance Law art 12 [enabling the City to develop non-city owned properties for affordable housing]; General Municipal Law arts 15, 16 [enabling the City to develop city owned properties for affordable housing]). Section 1802 of the New York City Charter sets forth the "Powers and duties" of the Commissioner of HPD and delegates HPD as the supervisory agency under the Private Housing Finance Law for New York City.

Stating that General Municipal Law articles 15 and 16 and Private Housing Finance Law articles 8, 8-A, 15 and 22 provide HPD with a variety of tools to foster affordable housing (*see* Private Housing Finance Law §§ 2 [15]; 572 [14]; 801 [1]; 1151 [9]; General Municipal Law § 692 [4]), the dissent finds that

Local Law No. 44 impermissibly conflicts with the state legislature's repeated and deliberate delegation of authority and discretion over affordable housing programs to HPD and undermines the state legislature's critical objectives for flexible and economical implementation of publicly funded housing programs. However, the statements of legislative findings and purposes contained in the Private Housing Finance Law and General Municipal Law contain no statement of general preemption. Although certain individual sections contain express preemptive language, they do not bar the enactment of Local Law No. 44.

 Nor can any intent to preempt the entire field of affordable housing be implied from the policy and purposes underpinning General Municipal Law articles 15 and 16 (§§ 501, 691) or Private Housing Finance Law articles 8, 8-A, 15 and 22 (§§ 400, 450, 800, 1150). The purpose of article 22 of the Private Housing Finance Law and articles 15 and 16 of the General Municipal Law is to improve the quantity, quality and affordability of housing in the City of New York (Private Housing Finance Law § 1150; General Municipal Law §§ 501, 691), allow the City to assist the private sector in the development of affordable housing by authorizing it to expend funds to do so (*id.*), and allow the City to make loans to build affordable housing (Private Housing Finance Law § 1152; General Municipal Law § 696-a) and dispose of property (General Municipal Law §§ 507, 695). In the bill jackets submitted by the parties concerning amendments to the Private Housing Finance Law and the General Municipal Law, there is no indication, either express or implied, of any intent on the part of the legislature to preempt the entire field of affordable housing. Rather, the legislative materials merely reflect the legislature's efforts to create a framework for the financing of affordable housing projects and to defer operational functions to local municipalities. While in a few instances funding is provided specifically through HPD, the legislature has not "evidenced a desire that its regulations should pre-empt the possibility of varying local regulations" (*New York State Club Assn.*, 69 NY2d at 221 [internal quotation marks omitted]; *see also Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 96-97 [1987]).

Under the doctrine of conflict preemption, a local law is preempted by a state law when a "right or benefit is expressly given . . . by . . . State law which has then been curtailed or taken away by the local law" (*Jancyn Mfg. Corp.*, 71 NY2d at

97). "[C]onflict preemption occurs when a local law prohibits what a state law explicitly allows, or when a state law prohibits what a local law explicitly allows" (*see Matter of Chwick*, 81 AD3d at 168). The crux of conflict preemption is whether there is "a head-on collision between the . . . ordinance as it is applied" and a state statute (*Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d 761, 764 [1989]).

■ Local Law No. 44 does not directly conflict with the state statutory scheme for affordable housing or wage reporting and is therefore not barred by conflict preemption. The law does not improperly contravene the state legislature's specific statutory delegations of responsibility to HPD or restrict the manner in which the agency exercises its delegated authority. Nor does the law prohibit what would be permissible for HPD under the General Municipal Law or the Private Housing Finance Law or "impose prerequisite additional restrictions on [HPD's] rights [to provide loans or grants] under [those] law[s]" (*Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 108 [1983] [internal quotation marks omitted]).

As the Council points out, compliance with the local law is not a condition for access to housing finance funding, since developers who fail to make the required wage disclosures do not lose city funding and are not barred from obtaining city contracts. Thus, the law does not interfere, in any way, with HPD's financing, loan, and land disposition processes for affordable housing development or limit HPD's ability to partner with any developer on an affordable housing project.

None of the state laws cited by the dissent prohibit HPD from collecting information about wages paid on public projects, or require HPD to prequalify contractors who do not disclose the wages they pay. Because no state law grants contractors the right to withhold information about wages from the City, or guarantees every contractor a place on HPD's prequalified list for affordable housing developments, Local Law No. 44 does not curtail a right or benefit provided by state law.

The imposition of penalties on contractors when wage records are not provided, in the form of ineligibility for inclusion on prequalified lists (Administrative Code § 26-905 [a]), does not prohibit what state law permits, nor allow what state law forbids. Noncompliance with the state statute brings a different penalty, criminal prosecution. Although Local Law No. 44 requires that employers document and report wages paid to

their employees, it does not require employers to pay a particular wage or wage rate and thus imposes no duty that thwarts the State's exclusive authority to regulate the minimum wage. Nothing in the requirements, or any other section of law, impedes upon, or sets standards for, how HPD can select its developer partners who receive loans or financial assistance. Moreover, Local Law No. 44 does not require HPD to maintain a prequalified list from which noncompliant contractors and subcontractors could be excluded, and in any event, HPD concedes that it does not maintain such a list at the present time.

Furthermore, as the dissent acknowledges, HPD has not been given exclusive authority over affordable housing projects. Certain powers are delegated to the Mayor, such as the authority to approve the terms and conditions of any urban renewal plan (*see* General Municipal Law art 15), and sales or leases pursuant to General Municipal Law articles 15 and 16 (*see* General Municipal Law §§ 507 [2] [d]; 695 [2] [a]; [4]). While the City Charter provides that, where the City is providing grants or loans related to affordable housing, the programs must be run by HPD, HPD is subject to Council oversight. The City Council is also given certain specified responsibilities, such as designating areas for urban renewal (*see* General Municipal Law § 504) or for the Urban Development Action Area Program (*see* General Municipal Law §§ 693, 697), and approving urban renewal projects as a matter of land use (General Municipal Law § 696; Private Housing Finance Law § 577).

*Ricketts v City of New York* (281 AD2d 245 [1st Dept 2001], *appeal dismissed* 96 NY2d 897 [2001]) and *Giuliani v Council of City of N.Y.* (181 Misc 2d 830 [Sup Ct, NY County 1999]), cited by the dissent, are inapposite. In those cases, the local law curtailing the authority of the Mayor, and held to be violative of Municipal Home Rule Law § 23 (2), was inconsistent with the state enabling law. However, nothing in the Private Housing Finance Law or the General Municipal Law vests sole authority in the Mayor to determine standards for the monitoring of construction or development of affordable housing. While the Private Housing Finance Law and the General Municipal Law empower the Mayor to regulate the loan process for the affordable-housing marketplace, that authority is limited to the management and creation of loans or grants.

Plaintiffs failed to establish a violation of their due process rights under the "stigma plus" rule (*see Matter of Lee*

*TT. v Dowling*, 87 NY2d 699, 708 [1996]). They did not show that they have been stigmatized, since HPD has not published any consumer complaints and has not yet issued regulations under the local law setting forth a protocol for vetting of consumer complaints before their publication on its website. Nor did plaintiffs show that they have been deprived of any future employment opportunities, and it is speculation at this point to say that they might ever be thus deprived. The local law does not provide that, in the event consumer complaints about contractors are received, the contractors will not be considered for affordable housing projects.

 As to their equal protection claim, plaintiffs contend that the local law discriminates against corporations in favor of individuals and that such discrimination is irrational. However, plaintiffs have failed "to negative every conceivable basis which might support [the law]" (*Heller v Doe*, 509 US 312, 320 [1993] [internal quotation marks omitted]). The Council asserts that the rational basis for making a distinction between corporations and individuals was to protect small businesses from the costs of reporting. The Council is correct that the local law is not invalid under rational-basis review simply because it may be underinclusive or fail to address all aspects of the problem (*see id.* at 321).

 Accordingly, the order of the Supreme Court, New York County (Frank P. Nervo, J.), entered on or about September 29, 2014, which granted defendant Council of the City of New York's motion to dismiss the complaint, and denied plaintiffs' cross motion for summary judgment declaring Local Law No. 44 unconstitutional, illegal, invalid, null and void, should be modified, on the law, to declare Local Law No. 44 constitutional, and, as so modified, affirmed, without costs.

 SAXE, J. (dissenting). New York City is in the throes of a long-standing crisis in affordable housing, due in part to high demand, high construction costs and soaring real estate values (*see generally* Office of the New York City Comptroller, *The Growing Gap: New York City's Affordability Challenge* [Apr. 2014] [The Growing Gap], http://comptroller.nyc.gov/wp-content/uploads/documents/Growing_Gap.pdf [accessed Mar. 8, 2016]). The City Charter assigns to the New York City Department of Housing Preservation and Development (HPD) the task of spearheading the City's efforts in combating that crisis with the creation and preservation of affordable housing in New York City. The City Council's enactment of the challenged

local law constitutes unacceptable injurious and mischievous parochial interference with HPD's broad oversight of the construction of affordable housing as mandated by the State.

The City Council enacted Local Law No. 44 (2012) of City of New York in 2012 in an effort to control and restrict HPD in this regard. I agree with the position of the City of New York and HPD, to the effect that Local Law 44 improperly contravenes the state legislature's specific statutory delegations of responsibility to HPD, restricting the manner in which the agency exercises its delegated authority, and should be invalidated on that ground.

The local law adds to title 26 of the Administrative Code of the City of New York a new chapter 10, entitled "Housing Development Project Reporting Requirements." While the majority characterizes the law as "relat[ing] to the disclosure on a public website of information regarding [HPD's] 'affordable housing' projects," that "disclosure" is not its sole purpose, and, indeed, is not the aspect of the law with which the City and HPD take issue. Three of its provisions are reporting requirements: two require HPD to report on its website its "prequalified" and "disqualified" lists[1] (Administrative Code § 26-902) and its housing development projects (Administrative Code § 26-903);[2] another requires developers to report wage information (Administrative Code § 26-904). However, in addition to those reporting requirements, a fourth provision affirmatively directs that certain contractors and subcontractors be deemed ineligible to be included on the prequalified list of contractors and subcontractors. Specifically, Administrative

---

1. " 'Prequalified list' means a list that identifies entities that are prequalified to be selected as developers and that was compiled, modified or used by the department to select developers within the immediately preceding five-year period; provided, however that the term 'prequalified list' shall also include a list of entities that the department compiles and makes available to developers to assist in the selection of contractors and subcontractors to perform project work" (Administrative Code § 26-901 [j]).

" 'Disqualified list' means a list that identifies entities that are precluded by the department from being selected as developers where 'disqualified' shall mean debarred, suspended or otherwise prohibited for any length of time. Such term shall also include a list of entities that are ineligible to be included on a list of prequalified contractors or subcontractors" (Administrative Code § 26-901 [g]).

2. The city appellants do not challenge the provision of the local law requiring HPD to report information about its own activities.

Code § 26-905 directs that "any contractor or subcontractor who fails to provide wage reporting information in accordance with section 26-904 of this chapter shall be ineligible to be included on a prequalified list of contractors and subcontractors" (§ 26-905 [a]), and that "any contractor or subcontractor with a history of construction conditions,[3] as determined by the department, shall be ineligible to be included on a prequalified list of contractors and subcontractors" (§ 26-905 [b]).

The City Council says it was prompted to enact Local Law 44 in reaction to (1) a perceived lack of transparency in HPD's operations regarding the construction of affordable housing, (2) a City Council investigation finding construction defects on city-supported projects, (3) U.S. Labor Department findings that contractors working under HPD supervision had been violating various rules and regulations, and (4) federal indictments of an HPD assistant commissioner and some developers in connection with a bribery and kickback scheme. Plaintiffs counter that the City Council's true purpose was to benefit construction trade unions, at the expense of small businesses that compete with union shops for contracts on affordable housing construction projects.

Plaintiffs, a trade association for New York's affordable housing industry, and contractors or subcontractors that have worked on affordable housing projects, brought this action to challenge Local Law 44. First, they contend that Local Law 44 violates the Due Process Clause under the "stigma plus" rule (*see Matter of Lee TT. v Dowling*, 87 NY2d 699, 708 [1996]), by requiring HPD to not only publish on the Internet complaints about contractors' work—without regard to the merit of those

---

**3.** " 'Construction condition' means:

"(1) a violation of the New York city construction codes issued to a housing development project, a developer or a covered contractor of such housing development project, during the project work or within a five-year period following the completion of such project;

"(2) a complaint related to the construction quality of a housing development project received by the department during the project work or within a five-year period following the completion of such project;

"(3) a determination by the department, during the project work or within a five-year period following completion of such project, that the construction quality of a housing development project does not comply with applicable law or does not conform to customary standards for construction in the city of New York" (Administrative Code § 26-901 [b]).

complaints—but also to debar contractors with a "history" of such complaints from working on affordable housing projects, all without any provision for notice or opportunity to be heard. They also argue that it violates the Equal Protection Clause by making its dictates applicable only to contractors whose annual revenue is $2.5 million or more, or to contractors whose corporate (but not individual) principal owner or officer "conducts or participates . . . in . . . the affairs of" more than one contractor or subcontractor, in which case the annual revenues of such contractors must be aggregated to determine whether the local law's dictates are applicable to them (Administrative Code § 26-901 [d]). Finally, plaintiffs' complaint asserts that Local Law 44 is preempted by the state statutes, contending that the law improperly imposes conditions not imposed by state law, and improperly compels HPD to exercise its authority where state law leaves that exercise of authority to HPD's discretion.

The City Council moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint; New York City and HPD, although nominally defendants, opposed the motion, arguing that Local Law 44 is preempted by the Private Housing Finance Law and the General Municipal Law. Plaintiffs cross-moved pursuant to CPLR 3212 for summary judgment declaring Local Law 44 invalid.

The motion court granted the City Council's motion to dismiss the complaint (2014 NY Slip Op 32504[U] [2014]), and the majority now affirms. I disagree. While I do not agree with plaintiffs' due process and equal protection arguments, in my view the conflict preemption argument made by the City and HPD is correct. I would therefore reverse the motion court's dismissal of this action and declare that Local Law 44 is invalid.

"Municipalities generally have the authority to adopt local laws to the extent that they are not inconsistent with either the State Constitution or any general law" (*Eric M. Berman, P.C. v City of New York*, 25 NY3d 684, 690 [2015], citing *DJL Rest. Corp. v City of New York*, 96 NY2d 91, 94 [2001], NY Const, art IX, § 2 [c] [ii], and Municipal Home Rule Law § 10 [1]). "A local law will be preempted either where there is a direct conflict with a state statute (conflict preemption) *or* where the legislature has indicated its intent to occupy the particular field (field preemption)" (*Eric M. Berman, P.C.* at 690 [emphasis added]).

The City Council suggests that there can be no problem with conflict preemption where the local law avoids a "head-on collision" with state law. But, the avoidance of a "head-on collision" with state law is not the test. While *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs* (74 NY2d 761 [1989]) found such a "head-on collision" between the challenged local law and state statutes at issue there, it did not hold that such a "collision" was required to find conflict preemption. Indeed, as the Court observed in *Lansdown Entertainment*, preemption "does not turn on semantics," but on the true consequences of the local legislation (*id.* at 764).

Cases establish that where a local law frustrates the operation of state law, the local law must give way. Here, for a variety of reasons, Local Law 44 operates to interfere with and frustrate the operation of applicable state laws. For example, a local law requiring final approval by the New York City Council for the operation of a commuter van service was invalidated on the ground that state law required the City to designate an agency to perform that function, and the Taxi and Limousine Commission had been so designated (*see Ricketts v City of New York*, 281 AD2d 245 [1st Dept 2001], *appeal dismissed* 96 NY2d 897 [2001]; *Giuliani v Council of City of N.Y.*, 181 Misc 2d 830 [Sup Ct, NY County 1999]). Similarly, in *Mayor of City of N.Y. v Council of City of N.Y.* (235 AD2d 230 [1st Dept 1997], *lv denied* 89 NY2d 815 [1997]), this Court held a local law invalid because it in effect gave the City Council an authority to appoint officers, conflicting with the City Charter provision granting the Mayor exclusive authority to make such appointments.

The New York City Charter assigns to HPD the mandate of preserving and creating affordable housing in New York City (*see* NY City Charter § 1802). To accomplish that task, the state statutory scheme, contained in General Municipal Law articles 15 and 16 and Private Housing Finance Law articles 8, 8-A, 15 and 22, has equipped HPD with a variety of tools, including tax incentives, loans, and the sale of city property at below-market rates to developers who will construct affordable housing. That legislative scheme provides the framework for accomplishing such construction. It does not merely put HPD in charge of directing the use of federal, state, and municipal financial assistance for these projects in New York City (although those tasks are among HPD's responsibilities); the

statutory framework generally names HPD as supervisory agency (*see* Private Housing Finance Law §§ 2 [15]; 572 [14]; 801 [1]; 1151 [9]; General Municipal Law § 692 [4]). Looked at as a whole, the state statutes vest HPD with broad authority over the creation, rehabilitation, maintenance, and improvement of affordable housing (*see* NY City Charter § 1802).

There are certain specified powers that the state statutory scheme delegates to others, so HPD cannot be said to have been given exclusive authority. Certain powers are delegated to the Mayor, such as the authority to approve the terms and conditions of any urban renewal plan (*see* General Municipal Law art 15), and that of approving sales or leases pursuant to General Municipal Law articles 15 and 16 (*see* General Municipal Law §§ 507 [2] [d]; 695 [2] [a]; [4]). The City Council is also given certain specified responsibilities, such as designating urban renewal or Urban Development Action Area Program (UDAAP) areas (*see* General Municipal Law §§ 504, 693, 697), and approving urban renewal projects as a matter of land use (General Municipal Law § 696; Private Housing Finance Law § 577). As those provisions illustrate, when the statutory scheme contemplates the assignment of authority to the City Council, it is clearly stated (*see e.g.* General Municipal Law § 694 [5]; Private Housing Finance Law § 452 [2]). But, the overall legislative scheme makes HPD ultimately responsible for arranging for the creation of affordable housing, including the selection of developers to work on projects. In this respect, the legislature did not delegate coextensive authority to the City Council.

As HPD explains, it has the ultimate responsibility to prudently use taxpayer funds while simultaneously obtaining quality work from the entities performing the construction work on those projects. In doing so, it must compete with the private sector to attract qualified and reliable contractors and subcontractors that are willing to submit bids and perform work on affordable housing projects. As each project is negotiated by HPD, both as to its scope, its financing and its construction participants, HPD must determine what burdens and conditions can realistically be imposed on the developers and contractors without putting the success of the project at risk. It is critical to HPD's ability to perform its assigned tasks that it retains discretion and flexibility in making those arrangements.

As the City and HPD point out, Local Law 44 conflicts with the general grant of broad supervisory authority given to HPD

by the statutory scheme over the construction of affordable housing in New York City. The state statutes put HPD in charge of making the necessary arrangements and negotiations for the creation of affordable housing. Local Law 44 contravenes that authority by imposing additional terms and conditions on the means by which HPD goes about accomplishing its task.

The City Council protests that Local Law 44 is, essentially, merely a disclosure statute, requiring developers to report wages paid to workers on city-supported projects, and HPD to provide information about the scope, location and participants in publicly-funded development projects, and to report complaints made about companies paid with public funds. But, in fact, Local Law 44 is not limited to imposing some additional reporting requirements. The enactment also requires that, in some circumstances, the reported information be used in determining who may or may not be hired.

Not only does the local law improperly interfere with HPD's authority under the City Charter and the statutory scheme, but the wage-reporting provisions of Local Law 44 would operate largely to impose additional costs, regulatory burdens and red tape on the responsible and law-abiding businesses and entities partnering with HPD, while very likely failing to unmask those who misclassify or underpay workers. Nor can its reporting requirements be dismissed as merely tracking the requirements of the Labor Law. For example, a contractor who assigns a worker to an HPD project for part of the week and a non-HPD project for the rest of the week will need to track that worker's dates of work, hours, pay, deductions, and allowances separately for HPD projects and non-HPD projects; this goes well beyond what the Labor Law requires (see Labor Law §§ 195 [3]; 661). Essentially, application of those reporting requirements of the challenged local law will force HPD to require its construction partners to undertake new and burdensome reporting arrangements.

As HPD acknowledges, legitimate and serious complaints are a consequence when the work of a municipal organization is of this magnitude. But, the facts that such problems arise, or are reported in the media, does not change the statutory framework for the creation of affordable housing, and does not authorize the City Council to usurp HPD's role in confronting and addressing such problems. Furthermore, the pending criminal indictments reflect that to the extent any individuals

involved in the process engage in criminality, the present criminal justice system is capable of discerning and handling them.

The Council's effort to exercise local legislative authority over the terms of participation in state housing programs cannot be squared with the state legislature's delegation of authority to HPD.

RENWICK, J.P., and RICHTER, JJ., concur; SAXE, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on or about September 29, 2014, modified, on the law, to declare Local Law 44 constitutional, and, as so modified, affirmed, without costs.